WAYNE E. WARREN v. CITY OF ASHEVILLE

No. 8428SC507

(Filed 7 May 1985)

1. **Municipal Corporations § 11.1— dismissal of police officer—trial de novo in superior court**

In a trial de novo in the superior court from a Civil Service Board's affirmance of plaintiff's dismissal as a police officer by the Chief of Police, the Board's decision is to be given no presumption of validity, and the jury is to make its own determination, under proper instructions by the trial court, on whether the Chief of Police had justification for his dismissal of plaintiff.

Warren v. City of Asheville

2. Municipal Corporations § 11— dismissal of police officer for soliciting fellatio—absence of justification—sufficient evidence

There was sufficient evidence to support a jury finding that the Chief of Police was not justified in finding that plaintiff had committed an act unbecoming to a police officer by soliciting the act of fellatio with another officer where plaintiff testified that his statement that he wanted to perform oral sex on the other officer was merely a test to determine whether the other officer was a homosexual.

3. Municipal Corporations § 11— dismissal of police officer—refusal to submit to polygraph examination

A law enforcement officer may be discharged from employment because of his refusal to submit to a polygraph examination if the officer has been informed (1) that the questions will relate specifically and narrowly to the performance of official duties, (2) that the answers cannot be used against the officer in any subsequent criminal prosecution, and (3) that the penalty for refusal is dismissal.

4. Municipal Corporations § 11— officer's refusal to take polygraph examination—justification

Plaintiff police officer was justified in refusing to take a polygraph examination where plaintiff learned through counsel that the polygraph operator planned to inquire whether plaintiff was a homosexual and whether he had ever had a homosexual encounter in the Asheville area since neither of those questions related specifically and narrowly to plaintiff's official duties and the charge being investigated that plaintiff solicited an act of fellatio with another officer.

5. Rules of Civil Procedure § 32— erroneous reading of deposition—harmless error

The trial court erred in permitting plaintiff's counsel to read a portion of an officer's deposition to the jury where the officer had been subpoenaed and was available to testify. However, such error was not prejudicial where the reading of a portion of the deposition served only to corroborate competent evidence already before the jury. G.S. 1A-1, Rule 32.

APPEAL by defendant from *Howell, Judge.* Judgment entered 28 July 1983 in Superior Court, BUNCOMBE County. Heard in the Court of Appeals on 11 February 1985.

*J. Lawrence Smith for plaintiff appellee.*

*Victor W. Buchanan for defendant appellant.*

COZORT, Judge.

Plaintiff was dismissed from his employment as a police officer by defendant City of Asheville on 25 February 1981. He ap-

pealed his dismissal to the Civil Service Board of Asheville which upheld his discharge. Plaintiff instituted this civil action in accordance with the Asheville Civil Service Law. At trial the jury found that the Chief of Police had acted without justification in firing the plaintiff. Defendant appealed, contending that the trial court erred by allowing plaintiff's counsel to read a portion of a deposition to the jury and that, as a matter of law, the evidence was insufficient to support the jury's verdict. We find no prejudicial error. The facts follow.

Plaintiff was employed by Asheville Police Department on 1 March 1975 as a patrolman, and as such, was subject to the Asheville Civil Service Law. He owned his own home and, beginning in 1977, had a business arrangement with another police officer, Robert G. Warlick, whereby Warlick stayed in plaintiff's house, working around the house and the yard instead of paying rent, and paid half of all other general expenses, such as heating oil, groceries, property taxes and electricity.

In the late evening hours of 5 January 1981 or early morning of the next day, plaintiff stated to Warlick that he wanted to perform oral sex on Warlick. Warlick said no. Plaintiff contends that he made the statement, on advice of others, to determine whether Warlick was homosexual. Warlick moved out of plaintiff's home the next day. Plaintiff and Warlick agree that there was no physical contact between them and that plaintiff made no further reference to oral sex to Warlick after this incident.

Warlick reported the incident to his superior officers, and on 23 January 1981, Police Chief F. W. Hensley ordered the Department's office of Internal Affairs to conduct an investigation. Plaintiff defended his statement to Warlick as a test to determine whether Warlick was a homosexual. Plaintiff was ordered to take a polygraph examination on 20 February 1981. On that day, the examination was postponed for four days. On the 24th, plaintiff reported to the Police Department, accompanied by his attorney, Marvin Pope. Pope discussed the tentative polygraph questions with Sergeant Gary Foster, the police officer assigned to administer the polygraph to plaintiff. Pope then advised plaintiff not to take the polygraph. Plaintiff told Chief Hensley he would not take the polygraph. Chief Hensley then suspended plaintiff and terminated his employment the next day. Plaintiff appealed his

dismissal to the Civil Service Board of Asheville, which affirmed his firing. In accordance with the Civil Service Law of the City of Asheville, plaintiff appealed the final decision of the City by filing this action in Superior Court in Buncombe County for a trial *de novo*. The jury found that the Chief of Police acted without justification: (1) in finding that plaintiff violated the rules of conduct of the Department by engaging in unbecoming conduct; (2) in finding that plaintiff violated the rules of conduct by willfully refusing to submit to a polygraph test; and (3) in taking disciplinary action against plaintiff. The trial court ordered the plaintiff reinstated with full back pay and benefits. Defendant City of Asheville appealed.

In three of its assignments of error, the City calls upon this Court to review the sufficiency of the evidence to send the case to the jury and to support the verdict rendered by the jury. The City argues that the trial court erred by denying its Motion for Directed Verdict, Motion for Judgment Notwithstanding the Verdict, and Motion for a New Trial. The City contends that allowing the jury's verdict to stand would allow the jury to substitute its judgment for that of the Chief of Police. We find no error in the trial court's denial of the City's motions.

Chapter 415 of the 1977 N.C. Session Laws, amending the Civil Service Law of the City of Asheville (1953 N.C. Sess. Laws ch. 757), provides, in pertinent part, as follows:

> Within 10 days of the receipt of notice of the decision of the board, either party may appeal to the Superior Court Division of the General Court of Justice for Buncombe County *for a trial de novo*. . . . If the petitioner desires a trial by jury, the petition shall so state. . . . Thereafter, the matter *shall proceed to trial as any other civil action*. (Emphasis ours.)

That law clearly provides for trial *de novo* in Superior Court. When a law so provides, the scope of the trial is as follows:

> "Power to try a case *de novo* vests a court with full power to determine the issues and rights of all parties involved, and to try the case as if the suit had been filed originally in that court." (Citation omitted.) . . . "This means that the court must hear or try the case on its merits from beginning to end

as if no trial or hearing had been held by the Board and without any presumption in favor of the Board's decision." (Citation omitted.)

*In re Hayes*, 261 N.C. 616, 622, 135 S.E. 2d 645, 649 (1964).

[1] Thus, the Civil Service Board's affirmance of the Police Chief's dismissal of plaintiff is to be given no presumption of validity, and the jury is to make its own determination, under proper instructions from the trial court, on whether the Police Chief had justification for the actions he took against the plaintiff. If there was evidence when considering it in the light most favorable to the plaintiff, which supported the verdict, then there was no error in the trial court's denial of defendant's motions. *Wallace v. Evans*, 60 N.C. App. 145, 298 S.E. 2d 193 (1982).

There were four "Charges and Specifications" upon which Chief Hensley relied in dismissing plaintiff. Plaintiff was charged with: (1) Unbecoming Conduct by "[o]n January 6, 1981 you actively committed a Common Law Offense by soliciting another officer to commit a felony, namely North Carolina General Statute 14-177"; (2) Insubordination by "[o]n two occasions you refused to follow legal orders to submit to a polygraph examination"; (3) a violation of Department Rule of Conduct Number 36 which directs employees to submit to polygraph examinations "specifically directed and narrowly related to a particular internal investigation being conducted by the Department"; and (4) a violation of Department Rule of Conduct Number 1 which provides that employees shall obey all Rules of Conduct. At the trial below, the court correctly submitted three issues to the jury: (1) Was Chief Hensley justified in finding and concluding that plaintiff had committed an act unbecoming to an officer by soliciting the act of fellatio? (2) Did the Chief of Police act without justification in finding and concluding that plaintiff willfully refused to submit to a polygraph test? and (3) Was the disciplinary action taken by the Chief justified? The trial court properly instructed the jury that the plaintiff had the burden of proof on all issues.

[2] There was sufficient evidence for the trial court to submit to the jury the issue of whether plaintiff committed an act of unbecoming conduct by soliciting fellatio. The plaintiff's testimony, if believed by the jury, established that his question to Warlick was, instead of a true solicitation of fellatio, merely a test to

determine whether Warlick was homosexual. Thus, there was evidence to support the jury's verdict on the first issue.

On the issue of refusing to take the polygraph test, the plaintiff's evidence tended to show that he refused to take the polygraph examination upon advice of counsel after his counsel had reviewed the tentative questions with Sergeant Foster. Plaintiff's counsel testified that the three questions he was shown by Foster were: "The first relevant questions [sic] was: Did you make the statement to the effect that would you like to have oral sex. And the second questions [sic] was: Are you a homosexual. And the third question: Have you ever had a homosexual encounter in the Asheville area."

Plaintiff's counsel further testified:

I explained to Chief Hensley at the second meeting that there was no point in the first question on his examination because we had already admitted that the statement was made, and Officer Warlick admitted that the statement was made about the oral sex and the reasoning behind it. So there was nothing that I felt there to test the truthfulness of whether both of the men admitted, you know, that the statement was made.

The second question was about: Are you a homosexual.
. . .

*  *  *  *

I told him there was no basis for the question, because there was no physical contact between Wayne and Warlick, and there was no—that it was not something for dismissal, disciplinary action. If there had have been, but there was not—there was no evidence that there was any at all, and both men, again, admitted this too.

*  *  *  *

And the same applied to the third question about the homosexual encounter in the Asheville area. There was nothing in Warlick's statement that I had been allowed to see to indicate that Wayne had ever had any type of homosexual encounter in Asheville. So there was no basis for that question

at all. I explained this to Chief Hensley, and that was why I was refusing to allow Wayne to take this test.

[3] The question of whether a law enforcement officer can be discharged from his employment because of his refusal to submit to a polygraph examination has not been decided in this State. Some states have answered in the affirmative and others in the negative. *See* Annot., 15 A.L.R. 4th 1207 (1982). At least one state, Florida, has held that the "same unreliability which prevents the polygraph's admissibility in court should preclude the dismissal of a police officer for failure to take a test." *Farmer v. City of Fort Lauderdale*, 427 So. 2d 187, 190 (Fla.), *cert. denied*, --- U.S. ---, 104 S.Ct. 74, 78 L.Ed. 2d 86 (1983). Of those decisions approving dismissal, the basic rules are that the officer must be informed: (1) that the questions will relate specifically and narrowly to the performance of official duties; (2) that the answer cannot be used against the officer in any subsequent criminal prosecution; and (3) that the penalty for refusal is dismissal. *See*, for example, *Rivera v. City of Douglas*, 132 Ariz. 117, 644 P. 2d 271 (1982). We think the better view is that discharge is permissible upon refusal to take the polygraph if the three requirements set forth above are followed, and we so hold.

[4] In the case *sub judice*, plaintiff learned through counsel that the Department planned to inquire during his polygraph examination whether he was a homosexual and whether he had ever had a homosexual encounter in the Asheville area. Neither of these questions related specifically and narrowly to plaintiff's official duties and the charge which was being investigated. As a matter of law, plaintiff was justified in refusing to take a polygraph examination which included those questions. Therefore, there was sufficient evidence upon which the jury could find that the Police Chief was not justified in disciplining the plaintiff for refusing to take that polygraph examination.

In summary, the evidence supported the jury's verdict, and the City's motions directed to the sufficiency of the evidence were properly denied.

[5] We now consider whether the trial court erred by allowing plaintiff's counsel to read to the jury a portion of Sergeant Foster's deposition which supported the plaintiff's contention that the tentative polygraph questions were too general and not rele-

vant to the specific charges against the plaintiff being investigated by Internal Affairs. Foster had been subpoenaed and was available to testify.

It was error for the trial court to allow plaintiff's counsel to read a portion of the deposition under these circumstances. The use of depositions at trial is governed by G.S. 1A-1, Rule 32. Generally, "testimony by deposition is less desirable than oral testimony and should ordinarily be used as a substitute only if the witness is not available to testify in person." Wright & Miller, Federal Practice and Procedure: Civil § 2142. "Although the North Carolina Rules of Civil Procedure provide extensive rights of discovery to any party, the use of a deposition in a civil case at the trial stage is sharply limited." *Maness v. Bullins*, 11 N.C. App. 567, 568, 181 S.E. 2d 750, 751, *cert. denied*, 279 N.C. 395, 183 S.E. 2d 242 (1971). All or part of a deposition may be used only if the provisions of G.S. 1A-1, Rule 32(a) are met. *See Nytco Leasing v. Southeastern Motels*, 40 N.C. App. 120, 252 S.E. 2d 826 (1979).

We have carefully examined the provisions of G.S. 1A-1, Rule 32(a) and find none under which the reading of the deposition should have been allowed. Therefore, the trial court erred in allowing the reading of a portion of the deposition. However, an error in the admission of evidence is not grounds for granting a new trial or for setting aside a verdict unless the admission amounts to the denial of a substantial right. G.S. 1A-1, Rule 61. "The burden is on the appellant not only to show error, but also to enable the Court to see that he was prejudiced and that a different result would have likely ensued had the error not occurred. (Citations omitted.) 'The admission of incompetent testimony will not be held prejudicial when its import is abundantly established by other competent testimony, or the testimony is merely cumulative or corroborative. (Citations omitted.)' " *Hasty v. Turner*, 53 N.C. App. 746, 750, 281 S.E. 2d 728, 730-31 (1981).

The portion of Foster's deposition read to the jury showed that Foster planned to ask a question on the polygraph examination which the plaintiff alleged was not relevant to the charges against him. Plaintiff had already elicited the same evidence from one of his witnesses and from cross-examining the Chief of Police. The reading of Foster's deposition thus served only to corroborate competent evidence already before the jury. Plaintiff

cannot show prejudice, and we hold that the admission of the evidence was harmless error.

Having carefully considered all of the plaintiff's assignments of error, we find no prejudicial error.

No error.

Judge JOHNSON concurs.

Chief Judge HEDRICK concurs in result.