RICHARD D. TURNER, ADMINISTRATOR OF THE ESTATE OF JANE L. TURNER v. DUKE UNIVERSITY, PRIVATE DIAGNOSTIC CLINIC, AND ALLAN H. FRIEDMAN, M.D.

No. 9014SC263

(Filed 15 January 1991)

1. **Rules of Civil Procedure §§ 11, 26 (NCI3d) — deposition stricken — appropriate sanction — actions of counsel rather than party — sanction not barred**

   The sanctioning court in a medical malpractice case did not abuse its discretion in striking a doctor's deposition taken in California six days before trial, which took place two years after plaintiff initiated the action, since it was logical and reasonable that the deposition procured in violation of deposition rules be prohibited at trial; furthermore, the fact that defendant's counsel and not defendant itself committed the acts giving rise to the sanction was not a bar to its imposition.

   **Am Jur 2d, Depositions and Discovery §§ 193, 196.**

2. **Rules of Civil Procedure § 11 (NCI3d) — admission of deposition prejudicial — opportunity to cross-examine denied — new trial properly ordered**

   The sanctioning court in a medical malpractice case did not err in ordering a new trial on the ground that the admission of a doctor's deposition at trial was prejudicial to plaintiff, since plaintiff was denied an opportunity to cross-examine the doctor; there was no merit to defendant's contention that the deposed doctor's testimony was cumulative as plaintiff's cross-examination had the capacity to reduce the credibility of the doctor's direct testimony to the jury, and there was thus a significant distinction between the deposed testimony and the live testimony; defendant could not argue that plaintiff waived his right to cross-examine the doctor when he failed to appear for the taking of a deposition which was improperly noticed

in violation of N.C.G.S. § 1A-1, Rules 11 and 26; and the grant-
ing of the new trial was a reasoned and just result of the
striking of the doctor's deposition testimony.

**Am Jur 2d, Depositions and Discovery §§ 193, 196.**

3. **Rules of Civil Procedure § 11 (NCI3d) — sanctions for improper
   deposition — objection to deposition at trial not essential**

   Since the trial court may impose sanctions upon its own
   initiative, plaintiff's objection at trial to the use of a deposition
   improperly noticed was not essential to the imposition of
   sanctions.

**Am Jur 2d, Depositions and Discovery §§ 193, 196.**

APPEAL by defendant Duke University from order entered
23 October 1989 by *Judge Robert H. Hobgood* in DURHAM County
Superior Court. Heard in the Court of Appeals 26 September 1990.

*Leonard T. Jernigan, Jr., P.A., by Leonard T. Jernigan, Jr.,
for plaintiff-appellee.*

*Maxwell & Hutson, P.A., by John C. Martin, and Yates,
Fleishman, McLamb & Weyher, by Beth R. Fleishman, for defendant-
appellant.*

GREENE, Judge.

The defendant, Duke University (Duke), appeals from an Order
of Sanctions entered by the trial court on 23 October 1989, pursuant
to a remand from the North Carolina Supreme Court. The facts
in this case have been set out in detail in *Turner v. Duke Universi-
ty*, 325 N.C. 152, 381 S.E.2d 706 (1989). Here, we limit the facts
to those necessary to address the issues raised.

The plaintiff filed this wrongful death action on 25 July 1985,
alleging medical malpractice on the part of the defendants Duke
University, Private Diagnostic Clinic, and Allan H. Friedman, M.D.
Trial was originally set for 16 February 1987, but the case was
continued twice with trial finally set for 27 July 1987.

On 6 July 1987, Duke University delivered to plaintiff's counsel
two Notices of Deposition, scheduling the deposition of Robert A.
Havard, M.D., for 21 July 1987 in California, and scheduling the
deposition of R. P. Scheerer, M.D., for 23 July 1987 in Florida.

Dr. Havard was one of the attending physicians to the decedent while she was at Duke University Medical Center in 1983. Dr. Scheerer was an oncologist who had treated the decedent for cancer in Florida in 1982.

On 17 July 1987, the plaintiff gave notice that he would not attend the scheduled depositions, moved to strike the Notices of Deposition, and moved for sanctions under N.C.R. Civ. P. 11(a), 26(g) and 37(b), alleging that the intent behind the depositions was to harass the plaintiff, to disrupt pre-trial preparation and to needlessly increase the cost of litigation. The motion for sanctions was denied on 20 July 1987. The defendant took the depositions as scheduled and the plaintiff did not attend either deposition.

Trial before a jury was held on 27 July 1987. Both depositions were admitted into evidence at trial. The trial court granted a directed verdict in favor of the defendants Dr. Friedman and the Private Diagnostic Center, and the jury returned a verdict in favor of the defendant Duke University. Judgment was entered upon the verdict on 7 August 1987.

The plaintiff appealed and the Supreme Court held that the trial court erred by granting the directed verdict for the defendants Dr. Friedman and the Private Diagnostic Clinic. *Turner* at 171, 381 S.E.2d at 717. The Court also held that the trial court erred in denying the plaintiff's motion for Rule 11 and Rule 26 sanctions, finding several of the plaintiff's arguments in support of sanctions to be meritorious. First, the Court found that the defendant failed to identify Dr. Havard in response to discovery requests. *Id.* at 169, 381 S.E.2d at 716. Second, the Court found that by noticing and taking the depositions so close to trial, the defendant had threatened to increase the plaintiff's litigation costs and cause unnecessary delay of the trial. *Id.* at 171, 381 S.E.2d at 717. This conclusion was further supported by a finding that Dr. Scheerer's deposition testimony was cumulative and duplicative of another physician's expert opinion. *Id.* Third, the Court found persuasive the plaintiff's argument that by scheduling the depositions so close to trial such that the plaintiff's counsel would not be able to adequately prepare for trial had counsel attended the depositions, the noticing and taking of the depositions represented an attempt to harass the plaintiff's counsel. *Id.* The Supreme Court, after reversing the denial of sanctions, ordered that the case be remanded for entry of sanctions. *Id.*

**TURNER v. DUKE UNIVERSITY**

[101 N.C. App. 276 (1991)]

On remand, the plaintiff, on 11 October 1989, filed a "Supplement to Motion for Sanctions" requesting *inter alia* that "a new trial be granted plaintiff against Duke University." The sanctioning court ordered defendant's counsel to pay attorney's fees to the plaintiff's counsel in the amount of $6,445.00. (The award of attorney fees was subsequently paid and is not at issue on appeal.) The sanctioning court also entered the following pertinent conclusions of law:

10. Plaintiff is entitled to have the notices of deposition of Drs. Havard and Scheemer [sic] stricken and therefore, the existing depositions may not be introduced into evidence at any subsequent trial.

11. The plaintiff is entitled to a new trial against Duke University as a Rule 11(a) sanction due to the prejudicial effect of the testimony of Dr. Havard, a person whom the jury may well have considered to be a key witness.

Finally, the sanctioning court ordered:

. . . .

2. That the notices of depositions of Drs. Havard and Scheerer are struck and the existing depositions of Drs. Havard and Scheerer may not be used in any subsequent trial.

. . . .

5. That a new trial is granted to plaintiff against Duke University for the violation of the Superior Court's order to identify witnesses, this being a Rule 11(a) sanction.

. . . .

The issues are: (I) whether the sanctioning court abused its discretion by (A) striking Dr. Havard's deposition, and (B) ordering a new trial upon the grounds that the admission of Dr. Havard's testimony at trial was prejudicial to the plaintiff; and (II) whether the failure of the plaintiff to object at trial to the introduction of the deposition precluded plaintiff from asserting it as a basis for sanctions.

I

North Carolina statutes authorizing the imposition of Rule 11 and Rule 26 sanctions do not authorize specific types of sanctions,

as are provided in Rule 37(b)(2), but instead authorize a trial court to impose "appropriate sanction[s]." *See* N.C.G.S. § 1A-1, Rule 11(a) (1990); N.C.G.S. § 1A-1, Rule 26(g) (1990). In the absence of statutory specificity relating to the selection of sanctions, our Supreme Court has approved an abuse of discretion standard as a proper means for reviewing the appropriateness of a particular sanction. *Turner* at 165, 381 S.E.2d at 714. *See also* Federal Judicial Center, The Rule 11 Sanctioning Process, 127 (1988) ("[t]he options available to a . . . judge in tailoring a sanction for a given case seem limited only by the judge's imagination and the possibility of appellate review under an abuse-of-discretion standard"). The trial court abuses its discretion "only upon a showing that its actions are manifestly unsupported by reason." *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985).

A

[1] The first question is whether the striking of the notice of the taking of the deposition of Dr. Havard in light of the circumstances of this case is a reasoned and just result. We believe the selection of this sanction was both logical and supported in reason and therefore not an abuse of discretion. In fact Duke abandoned its assignment of error on this issue and submitted in its brief that the striking of the notices of deposition of Dr. Havard "may arguably be considered a reasonable sanction under the circumstances of this case and therefore not an abuse of discretion." Indeed, it is very reasonable that the deposition procured in violation of deposition rules be prohibited at trial. *See* Manual for Complex Litigation Second § 42.3 (listing 21 categories of sanctions employed by federal courts, including the preclusion of evidence for failure to comply with discovery orders).

Furthermore, the fact that Duke's counsel, and not Duke itself, committed the acts giving rise to the sanction is not a bar to its imposition. Such lack of misconduct by a party to a lawsuit can mitigate against the use of severe sanctions. *See, e.g.*, Fed. R. Civ. P. 11 Advisory Committee Notes ("in considering the nature and severity of the sanctions to be imposed, the court should take account of the state of the attorney's or party's actual or presumed knowledge when the pleading or other paper was signed"). However, the selection of sanctions remains within the discretion of the trial court, and Rules 11 and 26 specifically authorize imposition of appropriate sanctions not only against the person who commits the

improper act, but also against the person on whose behalf the improper act was committed. N.C.R. Civ. P. 11, 26. *See also* Manual for Complex Litigation § 42.22 (referring to sanctions in general, "[s]anctions that affect the client . . . may, if otherwise warranted, be imposed although the attorney is solely responsible"). Here, while there was no misconduct by Duke, and while Duke is greatly affected by the sanction, we are unaware of any other sanction which would have corrected the prejudice to plaintiff. Therefore, we find no abuse of discretion by the sanctioning court.

B

[2]   The second question is whether the granting of the new trial is a reasoned and just result of the striking of Dr. Havard's deposition testimony. Again, we find this sanction to be both logical and supported in reason and therefore not an abuse of discretion.

Plaintiff argues that he was unfairly prejudiced by the admission of Dr. Havard's deposition testimony because he was denied an opportunity to cross-examine Dr. Havard. Duke contends that Dr. Havard's testimony was not prejudicial because Duke introduced other evidence essentially the same as Dr. Havard's deposition testimony. *See Warner v. City of Asheville*, 74 N.C. App. 402, 328 S.E.2d 859, *disc. rev. denied*, 314 N.C. 336, 333 S.E.2d 496 (1985) (admission of incompetent testimony not prejudicial when testimony is merely cumulative). Specifically, Duke argues that another physician, Dr. Weber, offered live testimony at trial very similar to Dr. Havard's deposition testimony.

Plaintiff offered evidence that the decedent's colon had been perforated during the administration of an enema. Both Dr. Havard and Dr. Weber examined the decedent after the administration of the enema, and both testified that while the decedent complained of abdominal cramping, she did not have symptoms consistent with a perforated colon. Dr. Weber, however, was cross-examined by the plaintiff and during that cross-examination the plaintiff elicited the following:

Q. Do you know about what time it was that you actually wrote your notes down, or when you actually saw her?

A. I don't know exactly. I don't have any independent recollection of that. The best that I can put it together is that I know that it was in the morning, and it was after we ordinarily do rounds. My guess is late morning or midday.

Q. Well, you have, moaning and complaining of abdominal pain post enema. You are aware that the notes indicate that the enema was administered around 11:00 o'clock that morning?

A. Right. I heard that this morning.

Q. And I believe she was transferred sometime around 2:00 o'clock?

A. It was somewhere between 11:00 and 2:00 o'clock. I saw her on Reed Ward.

Q. You were there for a neurosurgery consult that day, is that correct?

A. Mrs. Turner was admitted to the neurosurgical service. I wasn't there as a consultant. She was admitted to our service and it was a portion of the evaluation that every patient gets when they come to our service or to any service in the hospital.

Q. When you did your examination you were primarily interested in her neurosurgical status?

A. Yes, sir.

Q. You were not there to evaluate her necessarily for her gastronomical problems if she had any of those?

A. No, sir.

Q. Do you remember what she looked like?

A. No, sir.

. . . .

Q. When did you come to work, do you recall that?

A. We begin our day at 6:30 in the morning.

Q. Had you worked like 36 hour shift?

A. Yes, sir.

Q. A lot of residents work pretty long hours in a hospital, don't they?

A. Yes, sir.

Q. How long would you have been basically constantly working up until . . . You started at 6:00 on the 25th at the a.m.?

A. Yes, sir.

Q. And then you would have seen her sometimes around 11:00 . . . well, between 11:00 and 2:00 on the following day, is that right?

A. Yes.

Q. Had you had any sleep between those . . . that entire time?

A. I don't recall that day specifically, but unlikely or I wouldn't have done her evaluation, but prior to that time.

Plaintiff's cross-examination had the capacity to reduce the credibility of Dr. Weber's direct testimony to the jury on the issue of whether decedent's colon had been perforated during or after the administration of the enema. Since plaintiff did not have an opportunity to cross-examine Dr. Havard, a significant distinction between Dr. Havard's testimony and Dr. Weber's testimony is presented. This distinction precludes any conclusion that Dr. Havard's testimony was cumulative and supports a conclusion that plaintiff was unfairly prejudiced by the introduction of Dr. Havard's testimony. Furthermore, it is not required, as Duke contends, "that the record developed without [the assistance of cross-examination] affirmatively pin-point the harm in so many words. It is sufficient if we can see [as we can in this case] . . . that the development of this record and the development of the testimony of [Dr. Havard] as a witness might well have been quite different had the Plaintiff been accorded the right to put [Dr. Havard] through all of the rigors of a sharp, relentless, pressing, vigorous cross examination . . . " *Degelos v. Fidelity and Cas. Co. of New York*, 313 F.2d 809, 814 (1963). "Indeed, one of the most jealously guarded rights in the administration of justice is that of cross-examining an adversary's witnesses . . . ." *Barnes v. Highway Commission*, 250 N.C. 378, 394, 109 S.E.2d 219, 232 (1959).

Duke contends that plaintiff cannot use its failure to cross-examine Dr. Havard to support a finding of prejudice because plaintiff did not appear at the taking of the deposition. We disagree. Duke should not now be heard to argue that plaintiff waived his right to cross-examine Dr. Havard when he failed to appear for the taking of a deposition which was improperly noticed in violation of Rules 11 and 26.

We therefore conclude that the sanctioning court's order strik-ing the notice of deposition and prohibiting its further use and the order of the new trial were authorized sanctions under Rules 11 and 26 and there is no evidence of an abuse of discretion.

**[3]** Duke next argues that since the plaintiff did not object, at trial, to the admission into evidence of Dr. Havard's deposition testimony, he should not be permitted to assert that testimony as a basis for the selection of an appropriate sanction. Generally, "[e]rror may not be predicated upon a ruling which admits or ex-cludes evidence unless a substantial right of the party is affected, and . . . a timely objection or motion to strike appears of record." N.C.G.S. § 8C-1, Rule 103(a)(1) (1988). However, since the trial court may impose sanctions "upon its own initiative . . . ," *see* Rules 11 and 26, plaintiff's objection at trial to the use of Dr. Havard's deposition is not essential to the imposition of sanctions. To hold otherwise would unduly limit the wide discretion vested in the trial court in its selection of appropriate sanctions. *Turner* at 165, 381 S.E.2d at 714.

Affirmed.

Judges ORR and DUNCAN concur.

Judge DUNCAN concurred in this opinion prior to 30 November 1990.