THOMAS E. DEBNAM, PETITIONER-APPELLANT v. NORTH CAROLINA DEPARTMENT OF CORRECTION, RESPONDENT-APPELLEE

No. 9110SC512

(Filed 6 October 1992)

1. **Administrative Law and Procedure § 65 (NCI4th) — State Personnel Commission — superior court review — scope of appellate review**

    In an appeal from a Personnel Commission decision, the scope of appellate review of a superior court decision is the same as in other civil cases: first, the exceptions and assignments of error to the superior court decision; second, whether the trial court committed any errors of law in applying the review standards set forth in N.C.G.S. § 150B-51.

    **Am Jur 2d, Administrative Law § 730.**

DEBNAM v. N.C. DEPARTMENT OF CORRECTION

[107 N.C. App. 517 (1992)]

### 2. Constitutional Law § 354 (NCI4th) — administrative investigation — applicability of Fifth Amendment

An administrative law judge correctly concluded that petitioner's right against self-incrimination was violated where petitioner, an assistant superintendent of the Gates County Prison Unit, was interviewed concerning an incident involving two inmates and a ring; petitioner asked during the interview about the possibility of criminal charges being brought against him; the officials conducting the interview replied that they had been directed to conduct an administrative investigation and that the area administrator was angry and would take further action; petitioner answered questions at that interview but refused to answer questions at a subsequent interview, expressing concern that he might be criminally prosecuted; the officials responded that they were investigating management problems but did not inform petitioner that his statements could not be used against him in later criminal proceedings; and petitioner was eventually dismissed for his failure to cooperate in an internal investigation. A state employee subject to administrative investigation must be advised that the questions will relate specifically and narrowly to the performance of official duties; that the answers cannot be used against the employee in any subsequent criminal prosecution; and that the penalty for refusal is dismissal. In the absence of such advice, no penalties can be imposed on the employee for refusing to answer the questions.

**Am Jur 2d, Criminal Law § 703.**

**Supreme Court's views regarding proceedings to which Fifth Amendment's privilege against self-incrimination applies. 65 L. Ed. 2d 1306.**

Judge GREENE concurring.

APPEAL by petitioner from order entered 8 February 1991 by *Judge Donald W. Stephens* in WAKE County Superior Court. Heard in the Court of Appeals 17 March 1992.

*R. Bradley Miller for petitioner appellant.*

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Valerie L. Bateman and Associate Attorney General Anne J. Brown, for respondent appellee.*

**DEBNAM v. N.C. DEPARTMENT OF CORRECTION**

[107 N.C. App. 517 (1992)]

COZORT, Judge.

Petitioner appeals from order of the superior court affirming the decision of the State Personnel Commission that petitioner was properly discharged for personal misconduct and that his discharge did not violate his constitutional right against self-incrimination. We reverse.

Petitioner was employed in January 1982 as Assistant-Superintendent of the Gates County Prison Unit. On 10 September 1985 two officials from the respondent Department of Correction Regional Office interviewed petitioner concerning an incident involving two inmates and a ring. During the interview, petitioner asked the officials about the possibility of criminal charges being brought against him as a result of the ring incident. The officials replied that they had been directed to conduct an administrative investigation and that the Eastern Area Administrator, James Varner, was very angry about the situation and would take further action. Petitioner answered questions about the ring incident for approximately one hour. After the interview, petitioner sought legal representation, but none of the lawyers he contacted agreed to accept the case. One attorney told petitioner not to answer any questions until the Department informed him whether they intended to bring criminal charges based on the ring incident.

On 19 September 1985 District Manager Robert Lewis, Administrative Services Manager George Pollock, and James Varner conducted additional interviews of all the Gates County Prison Unit staff, including petitioner. During the interview, petitioner expressed concern that he might be criminally prosecuted for the ring incident and stated that he did not want to answer any questions until he was given a written decision regarding the ring incident. The three managers told petitioner they were investigating management problems, not the ring incident. After leaving the interview temporarily to telephone a friend whom he believed might be able to assist him, petitioner returned to the interview room and refused to answer questions. Mr. Varner informed petitioner that he could be dismissed for failing to cooperate with an internal investigation. Petitioner still refused to respond to any questions. Mr. Varner then suspended petitioner for his failure to cooperate with an internal investigation. On 8 October the respondent Department of Correction dismissed petitioner, citing his failure to cooperate as one of the reasons for the dismissal.

On 27 March 1986 petitioner appealed his dismissal to the North Carolina Office of State Personnel. In a proposed decision dated 25 January 1989, Administrative Law Judge Angela R. Bryant concluded that the Department had substantive just cause for dismissal because the Department had proved petitioner allowed two inmates to work on his personal car and truck. Judge Bryant also concluded, however, that petitioner was entitled to back pay because the Department committed procedural violations by failing to give petitioner a proper predismissal conference wherein petitioner would have received specific written reasons for his dismissal. Judge Bryant further concluded that certain allegations against petitioner involved possible criminal violations, that the Department had pursued criminal charges against other employees arising from allegations in personnel cases, and that the Department's efforts to compel answers from petitioner violated petitioner's right to protect himself against self-incrimination. Judge Bryant recommended that petitioner receive back pay covering the period from 19 September 1985 to 11 December 1987.

The State Personnel Commission adopted many of Judge Bryant's findings and conclusions; however, the Commission declined to adopt those dealing with the procedural violations and petitioner's right against self-incrimination. Instead, the Commission issued a decision finding and concluding there were no procedural violations and no violation of petitioner's right against self-incrimination. The Commission ordered that respondent's dismissal of petitioner be upheld as being for just cause.

Petitioner filed in Wake County Superior Court a petition for judicial review challenging the Commission's conclusions on both the procedural issues and the Fifth Amendment issue. Superior Court Judge Donald W. Stephens affirmed the Commission on both issues. On the Fifth Amendment issue, the trial court held:

> From the record it appears that both the Petitioner and the Administrative Law Judge erroneously concluded that Petitioner, as an Assistant Superintendent of the Gates County Prison Unit who was the subject of an internal mismanagement investigation by the Department *which also included conduct that could have created a potential for criminal charges*, was somehow shielded by the Constitution when he refused to answer job-related questions and was subsequently suspended and dismissed for such failure to cooperate and for other miscon-

duct. Clearly, an internal Departmental investigation into mismanagement at the Gates Prison Unit was a matter in which the Petitioner had no right to refuse to cooperate; he was required to answer all appropriate questions, *even those which may have incriminated him regarding criminal misconduct*, so long as he was not required to waive any 5th Amendment protections at subsequent criminal proceedings. In essence, the law provides to all public employees automatic "use" immunity that excludes statements which they are required to make during internal administrative investigations from use by prosecutors as evidence against them at any subsequent criminal proceeding. *The law does not require any form of warning to any such employee regarding his rights or obligations.* A government employer may lawfully require a public employee to answer potentially incriminating questions about the performance of his duties under threat of dismissal. A refusal to answer or otherwise cooperate can constitute just cause for dismissal. Likewise, incriminating answers given by a cooperating employee can form the basis for dismissal. However, neither lack of cooperation nor incriminating statements can form the basis of any subsequent criminal prosecution. Any public employee who refuses to answer appropriate questions regarding his job performance does so at the risk of employment termination. Petitioner in this case accepted that risk by his refusal to cooperate with a proper internal Departmental administrative investigation and was, therefore, subject to lawful termination.

The record in this case clearly shows that the Petitioner refused to answer questions from the beginning of the internal investigation on the basis of a defective 5th Amendment claim. This refusal standing alone was sufficient to support his suspension and subsequent discharge. (Emphasis added.)

Petitioner filed a timely notice of appeal. In his sole assignment of error, petitioner challenges the trial court's conclusions on the Fifth Amendment issue only, thereby abandoning any challenge to the trial court's rulings on the alleged procedural violations. The appeal before us, then, applies only to the trial court's ruling on the Fifth Amendment issue.

[1] The superior court's standard of review is governed by N.C. Gen. Stat. § 150B-51(b) (1991) which provides in pertinent part:

DEBNAM v. N.C. DEPARTMENT OF CORRECTION

[107 N.C. App. 517 (1992)]

[The court] may also reverse or modify the agency's decision if the substantial rights of the petitioners may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:

    (1) In violation of constitutional provisions;

    (2) In excess of the statutory authority or jurisdiction of the agency;

    (3) Made upon unlawful procedure;

    (4) Affected by other error of law;

    (5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or

    (6) Arbitrary or capricious.

The scope of our appellate review of the superior court decision is the same as in other civil cases. First, we consider the exceptions and assignments of error to the superior court decision. *Watson v. N.C. Real Estate Commission*, 87 N.C. App. 637, 639, 362 S.E.2d 294, 296 (1987), *cert. denied*, 321 N.C. 746, 365 S.E.2d 296 (1988). Second, we determine whether the trial court committed any errors of law in applying the review standards set forth in § 150B-51. *In re Kozy,* 91 N.C. App. 342, 344, 371 S.E.2d 778, 780 (1988), *disc. review denied*, 323 N.C. 704, 377 S.E.2d 225 (1989).

[2] The sole issue on this appeal is whether petitioner's dismissal for refusing to cooperate in an internal investigation violated his Fifth Amendment right against self-incrimination. Petitioner and the respondent Department agree that when a government agency requires an employee to make statements during an internal investigation, upon threat of losing his job, the statements may not be used against the employee in any subsequent criminal proceeding. *See Garrity v. New Jersey*, 385 U.S. 493, 499, 17 L.Ed.2d 562, 567 (1967). Petitioner here contends that he must be informed of this rule of law and his rights during his questioning. The Department contends that the employee does not have to be told of his rights. There are no cases on point in North Carolina; we turn to the cases in other jurisdictions.

In *United States v. Devitt*, 499 F.2d 135 (7th Cir. 1974), *cert. denied*, 421 U.S. 975, 44 L.Ed.2d 466 (1975), the United States

Court of Appeals for the Seventh Circuit adopted a rule requiring an agency to inform an employee that compelled information may not be used against the employee in subsequent criminal proceedings. In that case the employee, a police officer, was directed by his superiors to testify before a grand jury under the threat that his refusal to testify would result in disciplinary proceedings against him. The court stated: "Nor may disciplinary action be taken against the witness for his refusal to testify, unless he is first advised that, consistent with the holding in *Garrity*, evidence obtained as a result of his testimony will not be used against him in subsequent criminal proceedings." *Id.* at 141. (citations omitted). The court went on to hold that the police officer was not entitled to any relief in that case because he was attempting to have the rule extended to false statements he made before the grand jury. Summarizing the law, the court stated:

> *Garrity* provides the witness with adequate protection against the government's use, in subsequent criminal proceedings, of information obtained as a result of his testimony, where his refusal to testify would form the basis for disciplinary action against him. *Gardner* [*Gardner v. Broderick*, 392 U.S. 273, 20 L.Ed.2d 1082 (1968)] and *Sanitation Men* [*Uniformed Sanitation Men Ass'n, Inc. v. Commissioner of Sanitation*, 392 U.S. 280, 20 L.Ed.2d 1089 (1968)] provide the witness with a shield against such disciplinary action based upon his refusal to testify, in cases in which he refuses to do so, believing that his testimony or the fruits thereof can be used against him in subsequent criminal proceedings.

*Id.* at 142.

In *Matt v. Larocca*, 524 N.Y.S.2d 180, 518 N.E.2d 1172 (1987), *cert. denied*, 486 U.S. 1007, 100 L.Ed.2d 197 (1988), the New York Court of Appeals, that state's highest court, was faced with the question of whether the requirement that a grand jury witness be advised that his answers could not be used against him in subsequent criminal proceedings should be extended to civil proceedings convened to investigate disciplinary charges of work-related misconduct. The court declined to extend the rule, relying on its perception of the distinctions between a grand jury proceeding and a disciplinary proceeding:

> Petitioner did not appear before a Grand Jury investigating criminal charges; rather, his appearance was at a civil pro-

ceeding convened to investigate disciplinary charges of work-related misconduct. He was neither requested to waive his privilege against self-incrimination, nor was he faced with a possible criminal contempt conviction for refusing to testify; he stood only to be dismissed from his employment on charges of insubordination should he refuse to answer the questions posed by his employer. These questions specifically related to the performance of petitioner's official duties: wrongfully permitting an employee to be paid for time spent doing outside work for private individuals; approving time sheets he knew to be inaccurate; and allowing his subordinates to use State-owned materials and equipment for their personal benefit. . . . Indeed, the immunity protecting petitioner flows directly from the Constitution, and neither the Commissioner, nor counsel representing the Commissioner at the investigatory proceeding, had the power either to confer the immunity or to define or alter its breadth.

These critical distinctions persuade us that . . . the State was not obligated to inform petitioner that immunity attached before ordering him to answer questions. As the Commissioner's representative at the investigatory proceeding did not have the power to confer immunity, or to modify the immunity to which petitioner was entitled, there is no basis for concluding that he nonetheless had an affirmative obligation to inform petitioner of the automatic attachment of immunity. It is true that the State is required to inform a witness appearing before a Grand Jury of the fact that immunity will be received, even though, under current law, such witnesses are conferred transactional immunity automatically by operation of law (see, CPL 190.40; People v. Rappaport, 47 N.Y.2d 308, 313, 418 N.Y.S.2d 306, 391 N.E.2d 1284, supra). The consequences, however, of refusing to testify before a Grand Jury — criminal prosecution for contempt — are more serious than those of refusing to answer questions in a Public Officers Law § 61 proceeding — dismissal from public employment. Furthermore, a witness testifying before a Grand Jury ordinarily does not have a right to have an attorney present, which is a crucial factor underlying the State's obligation to inform the witness of the immunity conferred in the Grand Jury context. On the other hand, in this civil proceeding petitioner was assisted and advised by counsel present throughout the hearing, a situa-

tion which does not implicate the danger faced by a witness testifying before a Grand Jury, who does not have immediate access to counsel, of unwittingly forfeiting its privilege against self-incrimination.

We conclude therefore that insofar as petitioner was not requested to waive his right to immunity before answering questions specifically, directly and narrowly relating to his official duties, his dismissal did not violate fundamental fairness or his privilege against self-incrimination.

*Id.* at 184, 518 N.E.2d at 1176.

We do not concur with the New York court's conclusion that the consequences of refusing to answer questions in a disciplinary proceeding are so less serious than a grand jury proceeding that the employee does not have to be informed of his rights under the law. Rather, we conclude that a person's right to be free from self-incrimination under the Fifth Amendment to the United States Constitution is so basic, so fundamental, that the government is required to fully inform the person of that right in both grand jury and disciplinary proceedings. This rule is especially appropriate in a case such as the one below, where the employee did not have counsel present at the questioning, and the governmental agency, according to the uncontroverted findings of the administrative law judge, had pursued criminal charges against other employees arising from allegations in personnel cases.

We find support for this conclusion from North Carolina statutes and cases in similar instances. For example, N.C. Gen. Stat. § 126-35 (1991) requires that no permanent employee of the state may be discharged, suspended or demoted for disciplinary reasons unless he is furnished with a written statement setting forth the specific acts setting forth the reasons for the action and *the employee's appeals rights under the statute.*

In *Warren v. City of Asheville*, 74 N.C. App. 402, 328 S.E.2d 859, *disc. review denied*, 314 N.C. 336, 333 S.E.2d 496 (1985), we faced the issue of whether a police officer could be dismissed for refusing to take a polygraph examination. Upon the police officer's refusal to submit to an examination, the Chief of Police terminated the officer's employment with the City of Asheville. The Asheville Civil Service Board affirmed the firing, and the officer appealed for a trial de novo in superior court. At trial, the jury concluded

that the officer was fired without justification, and the trial court ordered his reinstatement with full back pay and benefits. The City appealed.

We affirmed, holding in pertinent part that an officer may be discharged from his employment upon his refusal to submit to a polygraph examination only if the officer is informed of the following: "(1) that the questions will relate specifically and narrowly to the performance of official duties; (2) that the answer cannot be used against the officer in any subsequent criminal prosecution; and (3) that the penalty for refusal is dismissal." *Id.* at 408, 328 S.E.2d at 863. We concluded that since the questions to be asked there were not specifically and narrowly related to plaintiff's official duties and the charge under investigation, plaintiff was entitled as a matter of law to refuse to take the polygraph examination. Therefore, the jury's verdict was supported by the evidence.

We find the Fifth Amendment principles requiring the warnings set out in *Warren* are equally applicable in the context of this case. We hold that a state employee subject to administrative investigation must be advised (1) that the questions will relate specifically and narrowly to the performance of official duties; (2) that the answers cannot be used against the employee in any subsequent criminal prosecution; and (3) that the penalty for refusal is dismissal. In the absence of such advice, no penalties can be imposed on the employee for refusing to answer the questions.

The record below shows that petitioner asked for reassurance that he would not be criminally prosecuted for his statements concerning the ring incident. The prison officials responded that they were investigating management problems; however, they did not inform him that his statements could not be used against him in later criminal proceedings. Rather, the officials informed petitioner only that he could be fired for refusing to answer questions.

The administrative law judge correctly concluded that petitioner's right against self-incrimination was violated. The State Personnel Commission and the superior court erred by concluding to the contrary. The superior court's order must be reversed, and the cause must be remanded to superior court for entry of an order reversing the State Personnel Commission and directing the Commission to adopt the proposed order of the administrative law judge.

DEBNAM v. N.C. DEPARTMENT OF CORRECTION

[107 N.C. App. 517 (1992)]

Reversed and remanded.

Judge JOHNSON concurs.

Judge GREENE concurs with a separate opinion.

Judge GREENE concurring.

I do not agree with the majority that this Court must, in reviewing an order of the superior court affirming or reversing a decision of an administrative agency, "determine whether the trial court committed any errors of law in applying the review standards set forth in N.C.G.S. § 150B-51." Instead the standard of review for an appellate court is "the same . . . utilized by superior courts." *Jarrett v. N.C. Dept. of Cultural Resources*, 101 N.C. App. 475, 478, 400 S.E.2d 66, 68 (1991). That is whether the decision of the administrative agency, not the order of the trial court, should be reversed because it is

(1) In violation of constitutional provisions;

(2) In excess of the statutory authority or jurisdiction of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or

(6) Arbitrary or capricious.

N.C.G.S. § 150B-51(b) (1987). Although appellate review "is limited to assignments of error to the superior court's order, this [C]ourt is not required to accord any particular deference to the superior court's findings and conclusions concerning the [agency's] actions." *Watson v. N.C. Real Estate Comm'n*, 87 N.C. App. 637, 640, 362 S.E.2d 294, 296 (1987). Otherwise, I fully concur with the majority.