Total Merch. Servs., LLC v. TMS NC, Inc., 2022 NCBC 51.

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
21 CVS 5801

TOTAL MERCHANT SERVICES, LLC,

    Plaintiff,

v.

TMS NC, INC. AND CHRISTOPHER
COLLINS,

    Defendants.

**ORDER AND OPINION
AWARDING SANCTIONS
AGAINST DEFENDANTS**

1.     **THIS MATTER** is before the Court on Plaintiff Total Merchant Services, LLC's ("Plaintiff" or "TMS") Motion to Dismiss Defendants' Counterclaims and for Fees (the "Sanctions Motion" or the "Motion") pursuant to the Court's inherent authority and under Rule 41(b) of the North Carolina Rules of Civil Procedure ("Rule(s)") filed 13 June 2022 in the above-captioned case.[1]

2.     Having considered and previously granted the Sanctions Motion, and having considered the briefs in support of and in opposition to the Motion, the supplemental briefing on the Motion, the relevant materials associated with the Motion, and the arguments of counsel at the 7 September 2022 hearing on the Motion (the "Hearing"), the Court concludes, in the exercise of its discretion, that justice requires that the Court enter sanctions against Defendants TMS NC, Inc. ("TMS NC")

---

[1] (Pl.'s Mot. Dismiss Defs.' Countercls. and for Fees and Request for Expedited Briefing [hereinafter "Sanctions Mot."], ECF No 142.)  Plaintiff's request for expedited briefing was denied by an order dated 23 June 2022, (Order on Pl.'s Request for Expedited Briefing and Notice of Hr'g, ECF No. 150.)

and Christopher Collins (together, "Defendants") for their misconduct by (i) striking Defendants' answer, affirmative defenses, and remaining amended counterclaims, (ii) entering default against Defendants on Plaintiff's claims, and (iii) awarding Plaintiff its reasonable costs and expenses, including its reasonable attorneys' fees, in connection with investigating, prosecuting, and securing relief through the Sanctions Motion for Defendants' misconduct in delaying the administration of this case, abusing the judicial process, and thereby causing significant harm to Plaintiff.

> *Councill, Gunnemann & Chally, LLC, by Joshua P. Gunnemann, and Ellis & Winters LLP, by Thomas H. Segars and Jeremy Falcone, for Plaintiff Total Merchant Services LLC.*

> *Hatcher Legal, PLLC, by Nichole M. Hatcher and Erik P. Lindberg, for Defendants TMS NC, Inc. and Christopher Collins.*

Bledsoe, Chief Judge.

3. As explained more fully below, Defendants' misconduct meriting the imposition of these sanctions includes (i) Defendants' improper removal of the action to federal court followed, on remand, by Defendants' stubborn refusal to respond to Defendants' April 2021 discovery requests for over a year; (ii) Defendants' persistent, repeated, and willful failure to comply with the Court's 6 May 2022 Order granting Plaintiff's Second Amended Motion for Preliminary Injunction (the "PI Order");[2] (iii) Defendants' filing of an improper interlocutory appeal of the PI Order after repeated

---

[2] (Order on Pl. Total Merchant Services' Second Am. Mot. Prelim. Inj. [hereinafter "PI Order"], ECF No. 98.)  The Court subsequently amended the PI Order twice, and the Second Amended PI Order, (Second Am. Order on Pl.'s Second Am. Mot Prelim. Inj. [hereinafter "Second Am. PI Order"], ECF No. 119), is the operative version of the PI Order that the Court will cite to in the remainder of this Order.

notice that it did not affect a substantial right;[3] (iv) Defendants' failure to timely comply with the Court's 1 July 2022 Order granting Plaintiff's Motion to Compel (the "Compel Order");[4] (v) Defendants' false statements to the Court concerning their compliance with the PI Order; and (vi) Defendants' systematic and repeated violation of paragraphs 70(a) and 70(b) of the PI Order.

4. Accordingly, the Court hereby **ENTERS** the following **FINDINGS OF FACT** and **CONCLUSIONS OF LAW** as set forth below.

I.

FINDINGS OF FACT[5]

5. TMS initiated this action in Wake County Superior Court on 28 April 2021, asserting claims against Defendants TMS NC and TMS NC's owner, Christopher Collins, for breach of contract, indemnification, specific performance, preliminary injunctive relief, and declaratory judgment arising out of Defendants' alleged breach of an exclusive sales agreement[6] and TMS's attempts to enforce its

---

[3] The Court emphasizes that it does not impose sanctions against Defendants because Defendants appealed one of the Court's orders. Rather, the Court imposes sanctions, in part, because Defendants persisted in making an improper interlocutory appeal despite multiple rulings from the Court that Defendants' appeal did not affect a substantial right under well-established North Carolina case law and because Defendants attempted to re-litigate their meritless position multiple times, causing further delay and expense in this case.

[4] (Order Granting Pl. Total Merchant Services LLC's Am. Mot. Compel Disc. Resps. and for Award of Expenses [hereinafter "Compel Order"], ECF No. 152.)

[5] Any Findings of Fact that are more appropriately deemed Conclusions of Law are incorporated by reference into the Court's Conclusions of Law.

[6] In brief, the parties' predecessors-in-interest entered into a Sales Representation Agreement (the "Agreement") in 2008 by which, in exchange for selling and marketing TMS's products and services, TMS NC is paid a "residual share," the difference between certain rates and fees charged to each business customer that TMS NC solicits on behalf of TMS and

inspection rights pursuant to the Agreement.[7]   Contemporaneously with the Complaint, TMS filed a Motion for Preliminary Injunction.[8]

6.      Before the Motion for Preliminary Injunction was heard, Defendants removed the case to the United States District Court for the Eastern District of North Carolina on 8 June 2021.[9]   The case was later remanded to the Superior Court of North Carolina on 16 December 2021 upon the federal court's conclusion that the case had been improperly removed and the federal court's resulting imposition of sanctions against Defendants.[10]

---

certain rates and fees that TMS pays to third party credit card associations and other related vendors for those services.  (Verified Compl. Ex. A, ECF No. 2; Verified Compl. ¶ 14; TMS NC's Answer Countercl. and Third-Party Claims ¶ 13, ECF No. 34.)  In 2018, the parties entered into an addendum to the Agreement (the "Exclusivity Addendum"), which increased TMS NC's residual share percentage in exchange for TMS NC's promise to exclusively market and sell TMS's products.  (Verified Compl. Ex. B, ECF.)

[7] (*See generally* Verified Compl..)

[8] (Mot. Prelim. Inj., ECF No. 4.)

[9] (Notice Removal, ECF No. 29.)

[10] (DKT 32 Order (remanding).)  In imposing sanctions in this action, in part for Defendants' improper removal, the Court does not sanction Defendants for the same conduct a second time but rather has considered this conduct in determining appropriate sanctions for Defendants' pattern of obfuscation and delay in this litigation.  The record shows that Defendants asserted frivolous arguments in support of removal and in opposition to Plaintiff's motion to remand in the federal court, which resulted in delaying the adjudication of this case for many months.  First, Defendants argued that the federal court had federal question jurisdiction over the case because of then-unasserted counterclaims.  It is well-established, however, that federal question jurisdiction cannot arise on the basis of counterclaims. *See, e.g.*, *Holmes Grp., Inc. v. Vornado Air Circulation Sys.*, 535 U.S. 826, 831 (2002) (holding that "a counterclaim—which appears as part of the defendant's answer, not as part of the plaintiff's complaint—cannot serve as the basis for 'arising under' jurisdiction"). In addition, Defendants knew and ignored the fact that Plaintiff and Defendants were all citizens of North Carolina.  This fact plainly destroyed complete diversity of citizenship and defeated diversity jurisdiction under well-established law. *See, e.g., Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005) ("the presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original

7.      After remand, on 18 January 2022, TMS filed an Amended Motion for a Preliminary Injunction.[11]  That motion was heard by the Honorable John W. Smith on 17 March 2022.[12]  Judge Smith did not resolve the motion and, at his subsequent recommendation, the Chief Justice of the Supreme Court of North Carolina designated this action as a complex business case on 21 March 2022 under Rules 2.1 and 2.2 of the General Rules of Practice for the Superior and District Courts and assigned the case to the undersigned.[13]

8.      On 4 April 2022, TMS filed a Second Amended Motion for a Preliminary Injunction (the "PI Motion"), which was fully briefed and argued at a hearing held on 22 April 2022.[14]  The Court granted the PI Motion in part in the PI Order.[15]  Among other things, the PI Order (i) enjoined Defendants from offering services that compete

---

diversity jurisdiction over the entire action").  Moreover, that Defendants were citizens of North Carolina barred them from removing the action in the first place.  *See, e.g.*, *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 83 (2005) ("[28 U.S.C.] § 1441(b) bars removal on the basis of diversity if any 'part[y] in interest properly joined and served as [a] defendan[t] is a citizen of the State in which [the] action is brought.' " (quoting 28 U.S.C. § 1441(b)).  In light of Defendants' assertion of these unsustainable contentions, the federal district court concluded that Defendants' removal lacked any "objectively reasonable basis" and assessed sanctions against Defendants.  (DKT 32 Order (remanding), ECF No. 56.)

[11] (Am. Mot. Prelim. Inj., ECF No. 17.)

[12] (*See* Notice Hr'g, ECF No. 20.)

[13] (Designation Order, ECF No. 1; Order Staying Case Until Bus. Ct. Accepts or Rejects, ECF No. 24.)

[14] (Second Am. Mot. Prelim. Inj., ECF No. 72; Scheduling Order and Notice of Hr'g, ECF No. 65.)

[15] (Second Am. PI Order.)

with TMS's services to customers[16] and (ii) required TMS NC to produce certain documents[17] and allow TMS to exercise certain inspection rights[18] within seven days from entry of the order, i.e., by 13 May 2022.

---

[16] (Second Am. PI Order ¶¶ 70(a) (ordering that "From the date hereof until the earlier of (a) the entry of a final judgment in this case or (b) the termination of the Agreement between TMS and TMS NC's predecessor, as amended by the Exclusivity Addendum effective as of 1 October 2018, TMS NC and Collins shall not in any capacity whatsoever, market, promote or sell any processing program that competes (or would reasonably be expected to compete) with TMS's processing program, including without limitation the Clover system"), 70(b) (ordering that "From the date hereof until the earlier of (a) the entry of a final judgment in this case or (b) the termination of the Agreement between TMS and TMS NC's predecessor, as amended by the Exclusivity Addendum effective as of 1 October 2018, TMS NC and Collins shall not, directly or indirectly, without the prior written consent of TMS, cause or induce any customer of TMS to do business with any competitor of TMS or to cease doing business with, reduce business with, or divert business from TMS.")).

[17] (Second Am. PI Order ¶ 70(d) (ordering TMS NC to "provide TMS current and updated financial and other information on TMS NC and its directors, officers, shareholders, partners, or principals. This financial and other information," including "documents sufficient to identify TMS NC's current directors, officers, shareholders, partners, members, or principals"; "current and updated documents evidencing the financial compensation paid by TMS NC to TMS NC's directors, officers, shareholders, partners, members, or principals for the annual period ending 31 December 2021, the quarterly period ending 31 March 2022, and the period beginning 1 April 2022 through the present or such other periods as the parties may agree"; and "current and updated account statements for any bank account operated, maintained, or controlled by TMS NC, and all deposit slips, wires, checks, or other evidence of payments into or out of those accounts for the period 1 January 2022 through the present").)

[18] (Second Am. PI Order ¶ 70(c) (ordering TMS NC to "allow TMS access to the premises of TMS NC and provide TMS with full and unfettered access to the books, records, accounts, and files of TMS NC pertaining to TMS NC's performance of the Services for the purpose of TMS inspecting and copying those items," including, without limitation, "financial statements, including profit and loss statements and balance sheets, and all other documents showing the assets, liabilities, costs, expenditures, receipts, and other such related matters of TMS NC, for the period 1 October 2018 to the present"; "documents evidencing the financial compensation of all of TMS NC's subagents for the period 1 October 2018 to the present as they pertain to TMS NC's performance of the Services"; and "any other books, accounts, records, and files of TMS NC relating to TMS NC's performance of the Services and its obligations under the Agreement for the period 1 October 2018 to the present.").)

9.     On 9 May 2022, Plaintiff's counsel emailed Defendants' counsel twice seeking to arrange access to TMS NC's premises and receipt of the material the Court ordered TMS NC to produce to Plaintiff under the PI Order.[19]

10.     Plaintiff's counsel emailed Defendants a third time the following day, 10 May 2022.[20]  Defendants' counsel responded that same day by email stating: "Your request will need to wait as I am in hearings.  I have not had an opportunity to review your request nor speak with my clients.  I will respond once my schedule permits.  It's unprofessional to assume."[21]   Plaintiff's counsel persisted, emailing Defendants' counsel three more times on 11 May and 12 May 2022.[22]

11.     Defendants' counsel did not respond to Plaintiff's counsel's further emails but filed a Notice of Appeal on 12 May 2022 that purported to appeal the PI Order.[23]  The interlocutory appeal was made to the North Carolina Court of Appeals, however, rather than the Supreme Court of North Carolina and was therefore without legal effect because it was made to the wrong appellate court.  *See* N.C.G.S. § 7A-27(a)(2).

12.     On 13 May 2022, the deadline for Defendants to permit inspection under the PI Order, Plaintiff's counsel copied Defendants' counsel in an email to the Court

---

[19] (Aff. Joshua P. Gunnemann ¶ 4 [hereinafter "Gunnemann Aff."], ECF No. 122; Gunnemann Aff. Ex. A, ECF No. 122.1.)

[20] (Gunnemann Aff Ex. A.)

[21] (Gunnemann Aff. ¶ 4; Gunnemann Aff. Ex. B, ECF No. 122.2.)

[22] (Gunnemann Aff. Ex. B.)

[23] (Gunnemann Aff. ¶ 5; Notice of Appeal, ECF No. 101.)

advising that Defendants had not yet complied with the PI Order.[24]  Later that same day, Plaintiff's counsel emailed Defendants' counsel stating that the purported appeal had not stayed the injunction and included authority in support.[25]  That evening, Defendants filed a Motion for Temporary Stay Pending Appeal,[26] which Defendants amended[27] later that night.  The Court summarily denied Defendants' motion without prejudice on 16 May 2022 because Defendants failed to comply with the Business Court Rules in presenting the motion.[28]

13.    During a hearing on other motions in this action on 18 May 2022, Plaintiff's counsel offered not to file a motion for contempt for Defendants' failure to comply with the PI Order if Defendants would agree to comply with the terms of the PI Order.  Defendants did not agree to comply at the hearing.

14.    The Court subsequently amended the PI Order ("Order Amending PI Order") on 19 May 2022 to more accurately reflect Plaintiff's interpretation of the Agreement and to indicate that Plaintiff had paid the required bond.  The Court did not otherwise modify the order at that time.[29]

---

[24] (Gunnemann Aff. Ex. C, ECF No. 122.3.)

[25] (Gunnemann Aff. Ex. C.)

[26] (Defs. TMS NC's and Christopher Collins' Mot. Temp. Stay Pending Appeal, ECF No. 102.)

[27] (Defs. TMS NC's and Christopher Collins' Am. Mot. Temp. Stay Pending Appeal, ECF No. 105.)

[28] (Order Summarily Den. Without Prejudice Defs. TMS NC, Inc.'s and Christopher Collins' Am. Mot. Temp. Stay Pending Appeal, ECF No. 108.)

[29] (Verified Compl. Ex. A; Order Amending Order on Pl. Total Merchant Services' Second Am. Mot. Prelim. Inj., ECF No. 115; *see also* Am. Order on Pl. Total Merchant Services' Second

15.     Later that same day, Defendants filed an Amended Notice of Appeal, this time properly addressed to the Supreme Court of North Carolina,[30] and this Court issued an order expressly clarifying that its Order Amending the PI Order did not change the dates for compliance with the PI Order and that the deadline for Defendants to comply with the PI Order remained 13 May 2022 (the "Clarifying Order").[31] The Court noted in the Clarifying Order, and again in the Second Amended Order on Plaintiff's Second Amended Motion for Preliminary Injunction that same day, that:

> The Court believes it has the authority to enter this Order and the Second Amended PI Order because it does not appear to the Court that the PI Order or Amended PI Order affects a substantial right of Defendants and because North Carolina law is clear that "a litigant cannot deprive the trial court of jurisdiction to determine a case on its merits by appealing from a nonappealable interlocutory order of the trial court." *Velez v. Dick Keffer Pontiac GMC Truck, Inc.*, 144 N.C. App. 589, 591 (2001). In any event, neither the Amended PI Order nor this Order affects the subject matter of Defendants' appeal. *See, e.g.*, N.C.G.S. § 1-294.[32]

---

Am. Mot. Prelim. Inj., ECF No. 115.1; Pl. Total Merchant Services' Second Am. Mot. Prelim. Inj., ECF No. 116.)

[30] (Am. Notice Appeal, ECF No. 117.)

[31] (Order Clarifying Order Amending Order on Pl. Total Merchant Services' Second Am. Mot. Prelim. Inj. [hereinafter "Clarifying Order"], ECF No. 118; *see also* Second Am. Order on Pl.'s Second Am. Mot Prelim. Inj., ECF No. 118.1; Second Am. PI Order.)

[32] (Clarifying Order n.1; Second Am. PI Order n.1.)

16.     Later that day, Plaintiff filed a Motion for Civil Contempt, For an Award of Attorneys' Fees, and For Expedited Briefing (the "Contempt Motion") with supporting brief and materials.[33]

17.     On 23 May 2022, Defendants filed yet another amended motion to stay the case pending appeal.[34]  That same day, the Court granted Plaintiff's request for expedited briefing on the Contempt Motion, and the parties timely submitted briefing in accordance with the order.[35]

18.     A hearing on the Contempt Motion was held on 7 June 2022, at which all represented parties were represented by counsel.[36]  On 2 August 2022, the Court entered its Order granting the Contempt Motion and holding Defendants in civil contempt for their willful violation of the inspection requirements of the PI Order (the "Contempt Order").[37]  Even though the Court issued the PI Order on 6 May 2022 and filed the Contempt Order nearly three months later on 2 August 2022, Defendants failed to even offer a date for the ordered inspection until 8 August 2022.  Even then, Defendants offered an inspection date that fell one day after the deadline that the

---

[33] (Pl.'s Mot. Civil Contempt, Award of Att'ys' Fees, and Expedited Briefing, ECF No. 120; Mem. Supp. Pl.'s Mot. Civil Contempt, Award of Att'ys' Fees, and Expedited Briefing, ECF No. 123; Gunnemann Aff.; [Proposed] Order on Pl.'s Mot. Expedited Briefing, ECF No. 121; Gunnemann Aff. Exs. A–C.)

[34] (Am. Mot. Temp. Stay Case and Enf't of All Orders Pending Appeal [hereinafter "Defs.' Am. Mot. for Stay Pending Appeal"], ECF No. 129.)

[35] (Order Pl.'s Mot. Expedited Briefing, ECF No. 128.)

[36] (*See* Notice Hr'g, ECF 131.)

[37] (Order on Pl. Total Merchant Services' Mot. Contempt [hereinafter "Contempt Order."], ECF No. 175.)

Court established for Defendant Christopher Collins to comply to avoid imprisonment. Until Defendants' offer on 8 August 2022, Defendants refused to comply with the inspection requirements of the PI Order in any respect.[38]

19.     The Sanctions Motion was filed on 13 June 2022, seeking the dismissal of Defendants' counterclaims with prejudice and an award of attorneys' fees as sanctions under the Court's inherent authority and Rule 41(b) for "Defendants' disregard of the Court's [PI Order], Defendants' frivolous attempt to deprive this Court of jurisdiction to enforce the [PI] Order, and their continued and unnecessary enlargement of these proceedings."[39]

20.     On 14 June 2022, Erik P. Lindberg filed a notice of appearance as counsel for Defendants. Mr. Lindberg had no prior involvement with this action prior to the filing of his notice of appearance.[40]

21.     On 27 June 2022, the Court entered its Order Denying Defendants' Motion to Stay Discovery and Defendants' Amended Motion for Temporary Stay of Case and Enforcement of All Orders Pending Appeal (the "Order Denying Stay").[41]

---

[38] Nevertheless, based on Plaintiff's agreement to the inspection date and the convenience of that date to Plaintiff, the Court agreed at the Hearing to delay Christopher Collins' imprisonment to permit Defendants an opportunity to fully comply with the inspection requirements of the PI Order on 18 August 2022.

[39] (Sanctions Mot. 1.)

[40] (Notice Appearance, ECF No. 148.) The Court notes that Mr. Lindberg's participation in the case appears to have prompted Defendants' first efforts at compliance with the PI Order and their discovery obligations under Rule 26 and the Compel Order.

[41] (Order Denying Defs.' Mot. Stay Disc. and Defs.' Am. Mot. Temporary Stay of Case and Enf't All Orders Pending Appeal [hereinafter "Order Denying Stay"], ECF No. 151 (denying (Defs.' Mot. Stay Disc., ECF No. 76) and (Defs.' Am. Mot. for Stay Pending Appeal)).)

The latter stay motion had been filed on 23 May 2022, four days after the Court issued its Clarifying Order indicating that the PI Order did not affect a substantial right of Defendants and thus was not properly appealable. In the Order Denying Stay, the Court ruled that Defendants' primary contention—that the PI Order denied them the right "to earn a living and practice their livelihood"—was "wholly refuted by the undisputed factual record," that "rejection of Defendants' substantial right analysis on this basis [was not] a 'close call,' " and that "Defendants' effort to stay this action pending appeal on this ground [was] wholly without merit."[42]

22. The Court also found in the Order Denying Stay that Defendants "advance[d] no evidence to substantiate their forecast that complying with the PI Order [would] be unduly expensive" and that "[t]he rest of Defendants' argument on this point amount[ed] to a disagreement with the Court's finding that Plaintiff has a present contractual right to access the information identified in the PI Order."[43] The Court further concluded that Defendants had "blind[ed] themselves" to various conclusions in the PI Order and denied Defendants' request for a discretionary stay pending appeal because that request was based "on grounds that the Court [had] already rejected in [the Order Denying Stay] and the PI Order."[44] Finally, the Court denied Defendants' request for a discretionary stay of discovery, concluding that such a stay "would be highly prejudicial and grossly unfair because Defendants [had]

---

[42] (Order Denying Stay ¶¶ 28–29.)

[43] (Order Denying Stay ¶ 31.)

[44] (Order Denying Stay ¶ 36.)

appended documents to their Motion to Dismiss or for Summary Judgment that [had] never been produced to Plaintiff while at the same time requesting to stay discovery on those very same issues."[45]  The Court noted that it "refuse[d] to indulge Defendants' further delay in answering discovery requests that [had] been pending for over a year without Defendants producing a single document in response."[46]

23.  Four days later, on 1 July 2022, the Court entered the Compel Order granting TMS's Amended Motion to Compel Discovery Responses and for Award of Expenses.  In that order, the Court ordered Defendants to produce numerous categories of documents no later than 18 July 2022 and awarded Plaintiff's attorneys' fees incurred in connection with the motion, finding that

> Defendants' refusal to comply with their discovery obligations was not substantially justified under Rule 37(a)(4) and under Rule 37(d). Defendants have not offered anything approaching a valid reason or excuse for failing to produce full and complete responses to the Discovery Requests within the time periods provided by the North Carolina Rules of Civil Procedure or as otherwise agreed by the parties.  Nor have they offered a substantial justification for maintaining their opposition to the Amended Motion.[47]

24.  In particular, the Court found that Defendants' principal contention—that "Plaintiff's failure to timely reply to Defendants' counterclaims excused Defendants' duty to make a timely response to the Discovery Requests"—was

---

[45] (Order Denying Stay ¶ 42.)

[46] (Order Denying Stay ¶ 43.)

[47] (Compel Order ¶ 23.)

"specious"[48] and further that "Defendants have consistently and obstinately refused to comply with their discovery obligations under the North Carolina Rules of Civil Procedure without any legal justification to delay providing full and complete responses to the Discovery Requests—and the production of any documents to Plaintiff—for over a year since the Requests were served."[49]

25. On 15 July 2022, Defendants served on Plaintiff supplemental interrogatory answers and produced to Plaintiff 2,907 pages of documents responsive to Plaintiff's discovery requests.[50] Plaintiff subsequently identified deficiencies in Defendants' production, and Defendants agreed to make a supplemental production of all outstanding material no later than 3 August 2022 to comply with paragraph 28(a) of the Compel Order.[51]

26. On 5 August 2022, Plaintiff submitted a Supplemental Brief Concerning Defendants' Compliance with Court Orders[52] reporting that Defendants made a

---

[48] (Compel Order ¶ 24.)

[49] (Compel Order ¶ 25.)

[50] (Defs.' Certification of Compliance ¶ 3, ECF No. 170.)

[51] Defendants' counsel represented in the parties' Joint Status Report Concerning Compliance with Paragraph 28(b) of the Compel Order (the "Joint Status Report"), (ECF No. 172), that Defendants' supplemental production would occur during "the first half of [the week of August 1, 2022]." (Joint Status Report 3.) At the status conference held in this case on 2 August 2022, the Court ordered, with Defendants' consent, that this supplemental production must be made no later than 3 August 2022. The Court further ordered Plaintiff to file a supplemental brief no later than 5 August 2022 to indicate the extent to which Defendants' production of documents had satisfied Defendants' obligations under the PI Order and the Compel Order.

[52] (Pl.'s Suppl. Br. Concerning Defs.' Compliance Ct. Orders, ECF No. 176.)

supplemental production, as promised, on 3 August 2022 but that the production still failed to fully comply with the requirements of the PI Order and the Compel Order. As to the PI Order, Plaintiff contended that the production failed to sufficiently identify Defendants' current ownership;[53] failed to show the complete financial compensation paid by TMS NC to TMS NC's directors, officers, shareholders, partners, members, or principals for certain periods; and failed to include Defendants' financial statements, books, accounts, and records, all required to be produced under the PI Order.[54] As to Defendants' effort to comply with the Compel Order, Plaintiff stated that "*many* items the Court ordered to be produced in the Compel Order still have not been produced."[55] Plaintiff forecasted that it would file a Business Court Rule ("BCR") 10.9 dispute summary with the Court if the deficiencies were not remedied by 10 August 2022.[56]

27. The Court held a hearing on the Sanctions Motion on 9 August 2022, at which all parties were represented by counsel. Counsel for the parties represented at the Hearing that, although Defendants had made an initial production, Defendants had not made a full and timely production of the documents the Court ordered Defendants to produce in its Compel Order. To the contrary, Defendants' counsel

---

[53] Plaintiff indicated that it was satisfied with this portion of the production and was "not pursuing contempt sanctions with respect to [this portion of] Defendants' production[.]" (Pl.'s Suppl. Br. Concerning Defs.' Compliance Ct. Orders 3.)

[54] (Pl.'s Suppl. Br. Concerning Defs.' Compliance Ct. Orders.)

[55] (Pl.'s Suppl. Br. Concerning Defs.' Compliance Ct. Orders 4 (*emphasis* in original).)

[56] (Pl.'s Suppl. Br. Concerning Defs.' Compliance Ct. Orders 4–5.)

acknowledged at the Hearing that there remained at least eight categories of documents that Defendants had still not produced that were required to be produced by the Compel Order. These records included bank records for over three years, 1099 forms for non-NAB credit card processors, and other financial records.

28. On 10 August 2022, Defendants filed their response to Plaintiff's 5 August 2022 supplemental brief, contending that they had fully complied with the production requirements of the PI Order, except to the extent documents existed reflecting compensation paid to Defendants' "directors, officers, shareholders, partners, members, or principals" for the first two quarters of 2022, which Defendants promised to produce no later than 15 August 2022.[57]

29. Defendants also acknowledged in their response that they had not yet fully complied with the Compel Order but assured the Court that Defendants "[would] make an additional supplemental production of documents consistent with Plaintiff's [4 August 2022] deficiency letter on 15 August 2022."[58] On 11 August 2022, Plaintiff emailed the Court a BCR 10.9 dispute summary that documented in greater detail the substantial extent to which Plaintiff contended Defendants had failed to comply with the production requirements of the Compel Order. Those deficiencies were consistent with Plaintiff's August 4 deficiency letter referenced in Defendants'

---

[57] (Defs.' Resp. to Pl.'s Suppl. Br. Concerning Defs.' Compliance Ct.'s Orders 2–3, ECF No. 178 (containing scrivener's error that production will be by "Monday, May 15, 2022").)

[58] (Defs.' Resp. to Pl.'s Suppl. Br. Concerning Defs.' Compliance Ct.'s Orders 3.)

response and in response to which Defendants promised a supplemental production no later than 15 August 2022.

30.     On 12 August 2022, the Court issued its Order on Plaintiff's Motion to Dismiss Counterclaims and Fees and Order to Show Cause (the "Sanctions Order").[59] In that Order, the Court granted the Sanctions Motion, concluding that sanctions were appropriate to address Defendants' misconduct, but further concluding that an award of sanctions should not be entered until Defendants and Monica Collins appeared and showed cause at a hearing to be held on 7 September 2022 why

> (i) Defendants and Monica Collins should not be held in civil contempt for their failure to comply with the Court's Compel Order and (ii) the Court should not enter sanctions, in addition to attorneys' fees and costs, up to and including striking Defendants' answer, affirmative defenses, and remaining amended counterclaims for Defendants' conduct in delaying the administration of this case through their improper removal of the action to federal court followed on remand by Defendants' stubborn refusal to respond to Defendants' April 2021 discovery requests, their filing of an improper interlocutory appeal of the PI Order after notice that it did not affect a substantial right, their stubborn and willful failure to fully comply with the PI Order, and their failure to comply with the Compel Order within the compliance deadlines set by the Court.[60]

31.     Thereafter, Defendants followed through on their promise to make a supplemental production on 15 August 2022,[61] and on 18 August 2022, Defendants finally permitted Plaintiff the inspection the Court had ordered in the PI Order.[62]

---

[59] (ECF No. 180.)

[60] (Sanctions Order ¶ 41.)

[61] (Defs.' Certification Compliance, ECF No. 185.)

[62] Defs.' Notice Inspection, ECF No. 186.)

The next day, the Court held a BCR 10.9 conference (the "10.9 Conference"), at which all parties were represented by counsel. At the 10.9 Conference, Plaintiff represented that, through Defendants' 15 August 2022 document production and the 18 August 2022 inspection, Defendants had substantially complied with paragraph 41 of the Contempt Order and with paragraphs 70(c) and 70(d) of the PI Order.[63] Plaintiff further represented, however, that it still needed time to confirm whether the materials that Defendants tendered to Plaintiff during the inspection satisfied the requirements of the Compel Order. Consistent with a Court-ordered briefing schedule, on 26 August 2022, Plaintiff filed a Notice of Deficiency identifying three categories of information that Defendants had still failed to provide.[64] After a further production by Defendants on 31 August 2022, Plaintiff confirmed on 6 September 2022 that Defendants had finally complied, seven weeks after compliance was due, with each of the terms of the Compel Order.[65]

32. Plaintiff also represented at the 10.9 Conference that, through the Court-ordered inspection, it had obtained evidence showing that Defendants breached paragraphs 70(a) and 70(b) of the PI Order between the entry of the PI Order on 6 May 2022 and 5 July 2022 by marketing, promoting, and/or selling

---

[63] (*See also* Certification Substantial Compliance, ECF No. 187 (Plaintiffs certifying that Defendants had substantially complied with the inspection requirements of the PI Order and the Contempt Order and the document production requirements of the PI Order).)

[64] (*See* Notice Deficiency, ECF No. 190.)

[65] (*See* Pl.'s Reply to Defs.' Resp. to Pl.'s Notice Deficiencies, ECF No. 198.) In light of Defendants' compliance, on 6 September 2022, the Court cancelled the Show Cause Hearing as it related to whether Defendants and Monica Collins should be held in civil contempt for their failure to comply with the Court's Compel Order. (*See* ECF No. 200.)

processing programs that compete (or would reasonably be expected to compete) with TMS's processing program and by causing or inducing customers of TMS to do business with competitors of TMS and/or diverting business from TMS. Plaintiff also represented that the inspection revealed evidence showing that Defendants had made false representations to the Court concerning their compliance with the Court's PI Order. Plaintiff set forth this evidence in detail in its supplemental memorandum filed on 24 August 2022 (the "Supplemental Sanctions Brief").[66] As a result, on 30 August 2022, the Court amended its Show Cause Order to include as a basis for appropriate sanctions on the Sanctions Motion "Defendants' alleged violation of paragraphs 70(a) and 70(b) of the PI Order and their alleged false statements to the Court about their compliance with PI Order," "if established."[67]

33. After full briefing,[68] the Court held the Show Cause Hearing on 7 September 2022, at which all parties were represented by counsel. Defendant Collins and Monica Collins were also present, and each participated in the Hearing.

34. The evidence brought forward by the parties in connection with the Sanctions Motion and the Show Cause Hearing establishes that on 15 August 2022, Defendants produced a list of customers they had placed with Plaintiff's competitors

[66] (Suppl. Mem. Supp. Pl.'s Mot. Dismiss Defs.' Countercl. and for Fees 2 [hereinafter Suppl. Mem.], ECF No. 189.) In light of this new evidence, Plaintiff expanded its sanctions request to include striking Defendants' answer and counterclaims and entering default against them.

[67] (Am. Show Cause Order ¶ 44.)

[68] Defendants responded to the Supplemental Sanctions Brief on 2 September 2022. (*See* Defendants' Resp. Suppl. Mem. Supp. Mot. Dismiss Countercls. and Fees, ECF No. 195.) Plaintiff filed its reply on 6 September 2022. (*See* ECF No. 199.)

from 2018 to the present. This list, and documents produced during the 18 August 2022 inspection of Defendants' premises, demonstrates that Defendants have placed over 100 merchants with Plaintiff's competitors in violation of the Agreement since 1 October 2020. Defendants placed at least 51 of these merchants after the Court entered its PI Order prohibiting this very activity. Some were placed with Plaintiff's competitors as recently as early August 2022, nearly three months after the PI Order was entered.[69]

35.     Based on the foregoing evidence, the Court finds that Defendants have systematically and continually violated paragraph 70(a) and 70(b) of the PI Order by repeatedly placing new customers with competitors and by successfully soliciting Plaintiff's existing customers to do business with Plaintiff's competitors rather than Plaintiff, all resulting in substantial damages to Plaintiff.

36.     Additionally, Defendants, through counsel, falsely represented to the Court on 2 August 2022 that Defendants had not placed any merchants with TMS's competitors after October 2020. The evidence, however, shows that Defendants placed at least 100 merchants with TMS competitors after that date.[70]

---

[69] (Suppl. Mem. 3.)

[70] (*See* Suppl. Mem. 3 (discussing evidence that Defendants placed over 100 merchants with Plaintiff's competitors in violation of the Agreement, including at least 51 merchants placed in violation of the PI Order)); (Tr. 8/2/2022 Hr'g 9:6–12, ECF No. 192 (asserting the last date on which Defendants violated the Agreement)). The transcript states that the last date on which Defendants violated the Agreement was in June 2020, not in October 2020. At the 7 September hearing, however, counsel agreed that he had misspoken and that the last date was in October 2020.)

37.     Based on these findings and consistent with applicable law, the Court issued an oral ruling at the Show Cause Hearing forecasting that the Court intended to enter a written order awarding sanctions against Defendants by striking Defendants' answer, affirmative defenses, and counterclaims, entering default against Defendants, and awarding Plaintiff its reasonable expenses, including attorneys' fees, incurred in investigating and bringing the Sanctions Motion. This Order memorializes the Court's oral ruling.[71]

II.

CONCLUSIONS OF LAW[72]

38.     Based on the foregoing Findings of Fact, the Court makes the following Conclusions of Law.

39.     This Court has previously summarized the standards our appellate courts have directed trial courts to consider in exercising their inherent authority to impose sanctions for a party's misconduct as follows:

> Trial courts retain the inherent authority "to do all things that are reasonably necessary for the proper administration of justice." *Beard v. N.C. State Bar*, 320 N.C. 126, 129 (1987). "[T]he power to sanction disobedient parties, even to the point of dismissing their actions or

---

[71] On 29 July 2022, the Court entered its Order and Opinion granting in part and denying in part Plaintiff's Motion to Dismiss Defendant TMS NC, Inc.'s Counterclaims and Defendants' Motion for Leave to Amend Counterclaims and Add Additional Parties. (Order and Op. Pl.'s Mot. Dismiss Defs.' Countercls. and Defs.' Mot. Leave Amend [hereinafter "July 29 Order and Op."], ECF No. 171.) In that Order and Opinion, the Court granted Defendants leave to file amended counterclaims for breach of contract and declaratory judgment and otherwise denied Defendants' Motion and granted Plaintiff's motion. (July 29 Order and Op. ¶ 43). The Court subsequently ordered Defendants to file the permitted amended counterclaims no later than 19 August 2022, but Defendants have yet to do so.

[72] Any Conclusions of Law that are more appropriately deemed Findings of Fact are incorporated by reference into the Court's Findings of Fact.

striking their defenses, . . . is longstanding and inherent." *Minor v. Minor*, 62 N.C. App. 750, 752 (1983); *see Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991) (holding that statutory schemes and court rules do not "displace[] the inherent power to impose sanctions for . . . bad-faith conduct," for statutory schemes and court rules, even when considered together, "are not substitutes for . . . inherent power"); *Daniels v. Montgomery Mut. Ins. Co.*, 320 N.C. 669, 674 (1987) ("[W]e hold it to be within the inherent power of the trial court to order plaintiff to pay defendant's reasonable costs including attorney's fees for failure to comply with a court order."); *Cloer v. Smith*, 132 N.C. App. 569, 573 (1999) ("The trial court . . . retains inherent authority to impose sanctions for discovery abuses beyond those enumerated in Rule 37."); *Few v. Hammack Enters., Inc.*, 132 N.C. App. 291, 298–99 (1999) (finding it was within the trial court's inherent authority to strike a party's answer for willful failure to comply with the rules of court); *Lomax v. Shaw*, 101 N.C. App. 560, 563 (1991) (concluding trial court "was well within the bounds of the court's inherent authority to manage the case docket when he struck the defendants' answer" for failing to execute a consent judgment).

. . .

The imposition of sanctions is left to the sound discretion of the trial judge and "will not be overturned absent a showing of abuse of discretion." *Cloer*, 132 N.C. App. at 573. A trial court will be held to have abused its discretion only "where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *E. Brooks Wilkins Family Med., P.A. v. WakeMed*, 244 N.C. App. 567, 578 (2016) (quoting *Couch v. Private Diagnostic Clinic*, 146 N.C. App. 658, 667–68 (2001)).

"North Carolina courts do not presently require the party requesting sanctions to demonstrate, as a part of its burden, that it suffered prejudice as a result of the opposing party's discovery failures or that the opposing party acted willfully." *Tumlin v. Tuggle Duggins P.A.*, 2018 NCBC LEXIS 51, at *31 (N.C. Super. Ct. May 22, 2018); *see Henderson v. Wachovia Bank of N.C., N.A.*, 145 N.C. App. 621, 629 (2001). That said, "[w]illfulness, bad faith, or prejudice to another party" may influence the court's discretion "in determining the appropriate sanction." *Out of the Box Developers, LLC*, 2014 NCBC LEXIS 7, at *9.

In assessing appropriate sanctions, North Carolina law is clear that a court may consider the entire record before it. *See Ray v. Greer*, 212 N.C. App. 358, 363 (2011) (noting that trial court may "view of the

totality of the circumstances of the case" in assessing appropriate sanctions (quoting *Badillo v. Cunningham*, 177 N.C. App. 732, 734–35, (2006))); *Batlle v. Sabates*, 198 N.C. App. 407, 420 (2009) (affirming trial court's dismissal of plaintiff's complaint as a sanction where trial court considered "the totality of the circumstances of the case in determining the appropriate sanction" (internal quotation marks omitted)). Indeed, "[w]hen sanctioning a party under its inherent authority, the court must weigh the circumstances of each case and choose a sanction that, in the court's judgment, 'properly takes into account the severity of the party's disobedience.' " *Out of the Box Developers, LLC*, 2014 NCBC LEXIS 7, at *10 (quoting *Patterson v. Sweatt*, 146 N.C. App. 351, 357 (2001)).

Finally, in determining whether the issuance of serious sanctions pursuant to a court's inherent authority is proper, the North Carolina Supreme Court has looked to guidance from federal courts. *See Daniels*, 320 N.C. at 674. The United States Court of Appeals for the Fourth Circuit, in a panel joined by former North Carolina Business Court Judge Albert Diaz, has held that serious sanctions, including the dismissal of an action, "are appropriate when a party deceives a court or abuses the process at a level that is utterly inconsistent with the orderly administration of justice or undermines the integrity of the process." *Projects Mgmt. Co. v. Dyncorp Int'l LLC*, 734 F.3d 366, 373 (4th Cir. 2013) (citations and quotation marks omitted).

*Red Valve, Inc. v. Titan Valve, Inc.*, 2019 NCBC LEXIS 57, at *39–43 (N.C. Super. Ct. Sept. 3, 2019), *aff'd*, 376 N.C. 798 (2021).

40.     Further, "[w]hen imposing sanctions, 'the trial court has discretion to pursue a wide range of actions both for the purpose of leveling the evidentiary playing field and for sanctioning the improper conduct.' " *Clark v. Alan Vester Auto Grp., Inc.*, 2009 NCBC LEXIS 13, at *27 (N.C. Super. Ct. July 17, 2009) (quoting *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995)). As such, the Court is free "to fashion an appropriate sanction for conduct which abuses the judicial process." *Id.* (quoting *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 593 (4th Cir. 2001)); *see*

*Turner v. Duke Univ.*, 101 N.C. App. 276, 280 (1991) ("the selection of sanctions remains within the discretion of the trial court").

41. Based on the evidence and findings recited above, the Court concludes that Defendants have engaged in protracted misconduct in this case, including by (i) improperly removing this case to federal court, for which Defendants were sanctioned and which delayed consideration of Plaintiff's motion for preliminary injunction for a year, (ii) stubbornly refusing to respond to discovery served in April 2021 for nearly fifteen months without producing a single page of material until July 2022 and then, after the Compel Order was issued, not making the full production required by the Compel Order until 31 August 2022; (iii) taking an improper interlocutory appeal of the PI Order and, despite the Court's rulings that the appeal did not affect a substantial right, relying on that appeal to continue to stubbornly and willfully refuse to comply with the PI Order; (iv) making false representations to the Court; and (v) stubbornly, willfully, repeatedly, and systematically refusing to timely comply with the Compel Order and the PI Order, all of which has resulted in significant delay in the adjudication of this action, substantial harm to Plaintiff, and caused Plaintiff to incur substantial and unnecessary expenses during this litigation.

42. Defendants' purported reasons for refusing to comply with the PI Order are meritless.

43.     First, Defendants repeated in numerous briefs, including in opposition to the Contempt Motion, the same arguments that the Court rejected in its PI Order in an apparent attempt to relitigate the merits of Plaintiff's PI motion.[73]

44.     Next, after the Court issued the Clarifying Order and Second Amended PI Order, which stated the Court's conclusion that the matter would not be stayed pending appeal, Defendants chose not to comply with their inspection duties under the PI Order and instead "improperly [sought] to reargue the merits of [Plaintiff's PI motion] . . . and the Court's conclusion that the matter is not stayed pending appeal." *Plasman v. Decca Furniture (USA), Inc.*, 2016 NCBC LEXIS 20, at *23 (N.C. Super. Ct Feb. 26, 2016) (holding plaintiffs in civil contempt).  Defendants' interlocutory appeal of the PI Order[74] and corresponding Amended Motion for Temporary Stay of Case and Enforcement of All Orders Pending Appeal,[75] purportedly because the PI Order affected a substantial right, were, as the Court found, "wholly without merit"[76] and only served to increase Plaintiff's costs and enlarge and delay this litigation.

---

[73] (*See e.g.*, Reply Mem. Supp. Defs.' Mot. Stay Disc. 2–3, ECF No. 110 ("[T]his Court should . . . find that the Plaintiffs [sic] breach of contract is invalid and unenforceable, since the 'Agreement' was already terminated on June 15, 2020[.]"); Defs.' Opp'n to Pl.'s Mot. Civil Contempt 9, ECF No. 135 (stating that enforcing the PI Order would be "a further violation of the Defendants' substantial rights" because Defendants "terminated the exclusivity agreement on June 15, 2020"); Defs.' Am. Mot. for Stay Pending Appeal 3 (requesting a discretionary stay and asserting that Plaintiff's claim for breach of contract is invalid because it "relie[s] on emails [from] 2021, during a time period after the Defendants' [sic] terminated" the Exclusivity Addendum).)

[74] (Am. Notice Appeal.)

[75] (Defs.' Am. Mot. for Stay Pending Appeal.)

[76] (Order Den. Stay ¶ 29.)

45. Further, Defendants failed to cite to any record evidence from any source in opposition to the Contempt Motion or in support of its Amended Motion to Stay the Case Pending Appeal and instead sought to challenge the accuracy of existing record evidence—evidence they acknowledged to be accurate in paragraphs 14 and 15 of TMS NC's own Answer—concerning the source of the residual share that TMS pays to Defendants.

46. In addition to frivolously attempting to re-litigate their merits argument against entry of the PI Order, the record evidence establishes that Defendants failed to fully comply with the Compel Order by the Court-ordered deadline. As noted above, Defendants finally permitted Plaintiff to inspect their records three months after the original deadline set by this Court, and Defendants acknowledged that at least eight categories of documents that are central to Plaintiff's claims and concerns—including bank records, 1099 forms, and financial records of various types—that were required to be produced on 18 July 2022 had still not been produced nearly a month after that deadline had passed.

47. Even more egregiously, the evidence establishes that Defendants violated the PI Order's exclusivity enforcement provisions at least 51 discrete times, including until at least the early days of August 2022—three months after the PI Order was entered.[77] Defendants offer only the most threadbare of arguments to

[77] (*See* Suppl. Mem. Ex. 1, Affidavit of Ryan Malloy 1–5, ECF No. 189.1 (showing that Defendants had placed 39 merchants with one of Plaintiff's competitors after May 2022 and had placed at least 12 with another after that date).)

justify their repeated violations of the exclusivity enforcement provisions of the PI Order, and the Court finds them singularly unpersuasive.

48.     First, Defendants argue that the competitors with which Defendants placed merchants were not in competition with Plaintiff because those competitors offer "features" different from Plaintiff.[78]   This argument is meritless.   The Agreement on which the PI Order is based, and which it seeks to enforce, expressly provides that Defendants must submit to TMS "*all*" credit card processing business that it secures,[79] and there is no provision in either the Agreement or the PI Order that permits Defendants to exclude from their exclusive agreement any card processing programs Defendants unilaterally assert are not in competition with Plaintiff.  Indeed, the PI Order is drawn expansively to reflect the Agreement's broad exclusivity arrangement and forbids the marketing, promotion, or sale of any processing program that "competes (*or would reasonably be expected to compete*)" with Plaintiff's products.[80]

49.     Moreover, Defendants had several options short of willfully disregarding the Court's PI Order had it sincerely believed that other programs did not compete with Plaintiff's products and should be excluded from the parties' exclusivity arrangement.  Not only does the Agreement expressly contemplate that Defendants could seek Plaintiff's permission to exclude a particular merchant from the terms of

---

[78] (Defs.' Resp. to Pl.'s Suppl. Br. Concerning Defs.' Compliance Ct.'s Orders 3.)

[79] (Compl. Ex. B ¶ 4 (*emphasis* added).)

[80] (Second Am. PI Order ¶ 70(a) (*emphasis* added).)

the Agreement's exclusivity clause,[81] but Defendants could also have sought the Court's permission to except a merchant from the PI Order for good cause shown. Defendants simply ignored those legal means to develop their business and instead chose to violate the Court's orders and engage in protracted discovery misconduct, as chronicled at length above, to hide their wrongdoing.

50.     Defendants made two further arguments at the Show Cause Hearing to justify their placement of merchants with Plaintiff's competitors: first, that they believed they had not violated the Agreement because they had terminated the Agreement pursuant to its terms, and second, that they simply misunderstood the PI Order and believed their conduct was permitted thereunder.

51.     As to their first argument, the Court has rejected Defendants' contention that they terminated the Agreement as a matter of law numerous times over the course of this litigation, and the Court's express rejection of that contention in the PI Order removes any basis for this alleged justification for Defendants' misconduct after 6 May 2022.

52.     Defendants' second claim, made for the very first time in this litigation at the Show Cause Hearing, that they misunderstood the PI Order's terms and thought they could continue operating as they had prior to the Order's May 6 entry is contrary to the evidence.   Not only did Defendants agree to the exclusivity provisions in the Agreement and operate under them for four years in exchange for greater compensation, but Plaintiff sued Defendants in January 2022 for violating

---

[81] (Compl. Ex. B ¶ 4.)

these very same provisions and the Court entered the PI Order on 6 May 2022 granting Plaintiff's request to enforce them. Having vigorously contested the PI motion and lost, Defendants cannot now credibly claim that they thought the PI Order did not require them to modify their conduct. And given the numerous briefs Defendants have filed and the many hearings they have attended since the PI Order was entered without once mentioning their alleged confusion over the PI Order's terms, Defendants' sudden, new-found excuse lacks any credibility. Even if the Court were to indulge Defendants' contention that they genuinely did not understand the PI Order's terms, Defendants' recourse was to seek clarification from the Court or request Plaintiff's consent for their intended course—not, as they chose instead, to defy the plain, unambiguous terms of the Court's order.

53. Finally, Defendants claim that their violations of the PI Order were *de minimis* and should result in lesser sanctions because Defendants only diverted 3.5% of their total portfolio to Plaintiff's competitors. But this 3.5% constitutes well over 100 merchants, and Defendants simply ignore that they agreed to exclusively sell Plaintiff's products and to receive a higher fee in exchange.[82] Moreover, the evidence shows, as discussed above, that Defendants violated the PI Order by placing at least 51 merchants after 6 May 2022, which diverted revenues away from Plaintiff and to Plaintiff's competitors that Plaintiff calculates to approach $500,000.[83] This degree of misconduct is far from a "technical failure" to abide by an order's "precise terms."

_____

[82] (Compl. Ex. B ¶ 1.)

[83] (*See* Suppl. Mem. Ex 1 1–5 (identifying at least 51 violations); *see also* Suppl. Mem. 8–9).)

*See Estes v. Clarke*, No. 7:15-cv-00155, 2022 U.S. Dist. LEXIS 116778, at *18–19 (W.D. Va. 2022) (declining to sanction "a technical failure to abide by the precise terms of the consent orders" ). Indeed, rather than show a *de minimis* violation of the PI Order, the evidence instead establishes that Defendants' repeated violations of the PI Order were willful, repetitive, and caused Plaintiff significant harm.[84]

54. Having made these findings and reached these conclusions, the Court now determines appropriate sanctions for Defendants' egregious misconduct. Plaintiff requests that the Court strike Defendants' answer, affirmative defenses, and counterclaims and enter default against them. The Court has summarized the relevant standards in considering such relief as follows:

> "[S]triking a party's answer is a severe sanction which should only be imposed where the trial court has considered less severe sanctions and found them to be inappropriate." *Few*, 132 N.C. App. at 299 (citing *Triad Mack Sales & Serv. v. Clement Bros. Co.*, 113 N.C. App. 405, 409 (1994)); *see* N.C. R. Civ. P. 37(b)(2)(b)-(c); *Rodriguez v. Beckwith*, No. COA15-1021, 2016 N.C. App. LEXIS 532, at *1-2, *5-6 (N.C. Ct. App. May 17, 2016). Moreover, "[i]mposition of sanctions that are directed to the outcome of the case, such as dismissals, default judgments, or preclusion orders, . . . are examined in the light of the general purpose of the Rules to encourage trial on the merits." *Moore v. Mills*, 190 N.C. App. 178, 180-81 (2008) (quoting *Am. Imps., Inc. v. G. E. Emps. W. Region Fed. Credit Union*, 37 N.C. App. 121, 124 (1978)); *cf. Essex Grp., Inc. v. Express Wire Servs.*, 157 N.C. App. 360, 363 (2003) (affirming sanctions

---

[84] For examples of *de minimis* violations of court orders that did not result in sanctions, see, for example, the far less significant violations in *Clarke*, 2022 U.S. Dist. LEXIS 116778, at *18–19 (finding *de minimis* a "technical failure" to abide by an order's "precise terms"); *Boink Sys. v. Las Vegas Sands Corp.*, No. 2:08-cv-00089-RLH-PAL, 2011 U.S. Dist. LEXIS 85785, at *10–11 (D. Nev. Aug. 3, 2011) (finding *de minimis* a single unknowing display of a banned logo); *Quinby v. WestLB AG*, 04 Civ. 7406 (WHP) (HBP), 2005 U.S. Dist. LEXIS 35583, at *32 n.13 (S.D.N.Y. Dec. 15, 2005) (finding *de minimis* a "technical [and] inconsequential" violation); *Winkler v. Asmar & Sons, Inc.*, No. 04-72024, 2005 U.S. Dist. LEXIS 33880, at *6–7 (E.D. Mich. Sept. 7, 2005) (finding *de minimis* a single banned ad run without enjoined party's knowledge or authorization).

order striking defendants' answer, entering default judgment, and ordering defendants to pay plaintiff's costs and attorneys' fees under Rule 37 where defendants' actions "were at best dilatory and at worst dishonest"); *Patterson v. Sweatt*, 146 N.C. App. 351, 358–59 (2011) (affirming dismissal of action with reasonable costs and attorneys' fees for, *inter alia*, multiple violations of court orders on discovery).

*Red Valve, Inc.*, 2019 NCBC LEXIS 57, at \*61–62.

55. As discussed at length above, the evidence of record shows that Defendants have engaged in a series of discovery abuses and other forms of misconduct from the inception of this action in April 2021 that have purposefully delayed the administration of this case, abused the judicial process, and caused significant harm to Plaintiff, including through their improper removal of this action to federal court, their improper interlocutory appeal of the PI Order after notice that it did not affect a substantial right, their consistent and obstinate refusal to comply with their discovery obligations without any legal justification, their failure to comply with the Compel Order within the compliance deadlines set by the Court, their false statements to the Court about their compliance with the PI Order, and, most egregiously, their repeated and willful violations of this Court's PI Order, including through their failure to comply with the PI Order's production and inspection requirements within the deadlines established by the Court and their repeated and willful violations of the restrictions contained in paragraphs 70(a) and 70(b) enforcing the exclusivity provisions of the Agreement.

56. Defendants' misconduct has been constant and ongoing since this litigation began, and particularly since this action was remanded to this Court in December 2021. Their misconduct was not deterred by the Court's award of

attorneys' fees of $28,715.34 on 1 August 2022 pursuant to the Compel Order,[85] and the Court concludes on this record, as it did in *Red Valve*, that "lesser sanctions will neither deter [Defendants'] misconduct nor fairly address the unrelenting defiance of the Court's orders." *Red Valve, Inc.*, 2019 NCBC LEXIS 57, at *64. Accordingly, the Court concludes, in the exercise of its discretion, that the severest sanctions are necessary and appropriate to address Defendants' misconduct and to preserve the integrity of the judicial process.

57. Therefore, the Court, in the exercise of its discretion and pursuant to its inherent authority and Rule 41(b), and after having carefully and thoughtfully considered the potential application of lesser sanctions, concludes that lesser sanctions are not appropriate and that instead striking Defendants' Answer, including all affirmative defenses and counterclaims asserted therein, and entering default against Defendants is the most appropriate sanction in light of Defendants' misconduct.

58. It is also "within the inherent power of the trial court to order [a party] to pay [the opposing party's] reasonable costs including attorney's fees for failure to comply with a court order." *Daniels*, 320 N.C. at 674. The Court thus concludes, in the exercise of its discretion, that Defendants' repeated and willful failure to comply with the PI Order, which has caused Plaintiff to incur substantial, unnecessary expenses in this litigation, requires that Defendants pay Plaintiff's reasonable expenses, including Plaintiff's reasonable attorneys' fees, incurred in (i) investigating

---

[85] (*See* Order Pl.'s Fee Appl., ECF No. 174).

the conduct necessitating the Sanctions Motion and the Supplemental Sanctions Brief and (ii) seeking and obtaining the relief afforded through the Sanctions Motion and Supplemental Sanctions Brief, including prosecuting the Sanctions Motion and the matters raised in the Supplemental Sanctions Brief.

59.     **WHEREFORE**, the Court, having granted the Sanctions Motion, and for the reasons stated above, in the exercise of its discretion, and pursuant to its inherent authority and under Rule 41(b), hereby **ORDERS** that sanctions should be entered against Defendants as follows:

a.      Defendants' Answer, including all affirmative defenses and remaining counterclaims asserted therein, is hereby stricken;

b.      Default is hereby entered against Defendants, and this matter shall proceed to a determination of Plaintiff's damages;

c.      Plaintiff shall be entitled to recover from Defendants its reasonable expenses, including attorneys' fees, incurred in (i) investigating the conduct necessitating the Sanctions Motion and the Supplemental Sanctions Brief and (ii) seeking and obtaining the relief afforded through the Sanctions Motion and Supplemental Sanctions Brief, including prosecuting the Sanctions Motion and the matters raised in the Supplemental Sanctions Brief; and

d.      The Court shall address the total amount of fees and expenses to be awarded hereunder by separate order after full briefing and hearing on Plaintiff's fee application as follows:

i. Plaintiff shall have through and including fifteen (15) days after entry of this Order to file its fee application and any supporting materials;

ii. Defendants shall have through and including fifteen (15) days after Plaintiff files its fee application and supporting materials to file any response to Plaintiff's fee submission;

iii. Plaintiff shall have through and including seven (7) days after Defendants' response to file a reply in support of its fee application;

iv. The Court will determine at a later date whether to convene a hearing on Plaintiff's anticipated petition for fees and costs.

**SO ORDERED**, this the 19th day of September, 2022.

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Chief Business Court Judge